Thomas A. GUERRO, Plaintiff, Appellant,

v.

Roger F. MULHEARN et al., Defendants, Appellees.

Ralph F. ANDREWS, Plaintiff, Appellant,

v.

Kathy DeCote YOUNG et al., Defendants, Appellees.

Nos. 73–1005, 73–1194.

United States Court of Appeals, First Circuit.

Submitted March 7, 1974.

Decided June 24, 1974.

Ralph F. Andrews on brief pro se.

Thomas A. Guerro on brief pro se.

Richard Shapiro, Boston, Mass., on brief for Prisoners' Rights Project, amicus curiae.

James A. Brett, Asst. City Sol., Worcester, Mass., on brief for Roger F. Mulhearn and Clifford M. Auger, appellees.

Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Div., Michael C. Donahue, and Dennis J. LaCroix, Deputy Asst. Attys. Gen., Boston, Mass., on brief for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant in No. 73–1005, Thomas Guerro, brought a civil rights action pro se under 42 U.S.C. §§ 1983 and 1985, alleging that certain officials of the Commonwealth of Massachusetts violated his constitutional rights by illegally wiretapping his telephone and using evidence obtained thereby at his criminal trial. Appellant was convicted and given a 27 to 30 year sentence. Guerro also alleges that perjury was committed in order to obtain a warrant to search his apartment, and that the existence of the wiretap was intentionally concealed during trial. Declaratory judgment and compensatory and punitive damages are sought. The case was referred by the district court to a magistrate and was dismissed, following the magistrate's recommendation, on the ground that the defendants were immunized from liability by virtue of their offices, and that plaintiff had failed to exhaust state remedies.

Appellant in No. 73–1194, Ralph Andrews,[1] filed a pro se complaint alleging that various persons conspired to indict, try and convict appellants by the use of perjured testimony before the grand jury and at trial, resulting in a denial of constitutional rights. Equitable relief and thirty-two million dollars in damages are sought. Appeal was taken in this case from denial by the district court of leave to proceed in forma pauperis.

On June 4, 1973 this court issued Memoranda and Orders appointing the Prisoners' Rights Project amicus curiae in both cases and propounding, inter alia, the following question:

"Whether, in light of Preiser v. Rodriguez, 411 U.S. 475 [93 S.Ct. 1827, 36 L.Ed.2d 439] (1973) and Gibson v. Berryhill, 411 U.S. 564 [93 S. Ct. 1689, 36 L.Ed.2d 488] (1973) and Gomez v. Miller,[2] 341 F.Supp. 323 (S. D.N.Y.1972), affirmed, 412 U.S. 914 [93 S.Ct. 2728, 37 L.Ed.2d 141] (1973), a state prisoner, in a § 1983 suit for damages brought during the pendency of a state appeal or other state proceeding for review of conviction, based on constitutional claims which are or could also be raised in the state court proceeding, must exhaust his state court remedies or whether such a damage suit is completely barred?"[3]

## I. EXHAUSTION

 The first issue to be considered on this appeal is the question set out above. In light of Preiser v. Rodriguez, *supra*, it is clear that the requests for equitable relief are barred as an attempt to circumvent the habeas corpus exhaustion rule. Requests for relief in the form of money damages under section 1983 are not controlled by *Preiser*, but we conclude that the reasoning and policy of that case, as well as the policy considerations underlying Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Samuels v. Mackell, 401

---

1. James J. Pina is also a plaintiff-appellant in this case.

2. *Gomez* is omitted from the Memorandum and Order in No. 73–1005.

3. Several other questions were propounded, but the parties and the amicus have generally refrained from dealing with them, and review of the scanty record in these cases leads us to agree that treatment of the issues raised would be premature.

U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), require a federal court to stay its hand where disposition of the damage action would involve a ruling implying that a state conviction is or would be illegal.

The general rule in civil rights actions is now clearly established to be that exhaustion of state remedies is not a prerequisite. As the Court said in Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Later cases have confirmed and strengthened the position taken in Monroe v. Pape; *see, e. g.,* Steffel v. Thompson, 415 U.S. 452, 469–475, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); [4] Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1971); Wilwording v. Swenson, 404 U. S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Educa-

tion, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622 (1963).[5] But the Court carved out an exception to this general rule in *Preiser*. The Court there held that where suits for equitable relief under section 1983 would, because of the overlap in the scope of section 1983 and habeas corpus,[6] come within the "core of habeas corpus" (defined as a "challenge to the fact or duration of . . . confinement", 411 U.S. at 489, 93 S.Ct. at 1836), the exhaustion requirement of habeas must not be "circumvented".

Although the Court expressly distinguished the situation where the relief sought is money damages, rather than release from incarceration, it did so in the context of a case in which determination of a damage claim would not require ruling upon the validity of a state criminal conviction during the pendency of the criminal process.[7] Since the instant case does not come within the "core of habeas corpus" as defined in *Preiser*, but also is unlike the kind of damage action which the Court there held, would not be subject to an exhaustion requirement, we think that *Preiser* is not here controlling.[8]

4. "When federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3)—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights." Steffel v. Thompson, 415 U.S. 452, 472, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974).

5. *See generally*, Developments in the Law: Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1094 (1970); Note, Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 82 Harv.L.Rev. 1486 (1969); Chevigny, Section 1983 Jurisdiction: A Reply, 83 Harv.L.Rev. 1352 (1970).

6. The language of section 1983, which speaks in terms of "deprivation of . . . rights, privileges, or immunities secured by the Constitution and laws . . . ." is broad enough to include an illegal deprivation of physical liberty, which is the essence of habeas corpus. *See* Preiser v. Rodriguez, *supra*, 411 U.S. at 482–489, 93 S.Ct. 1689.

7. The issue facing the Court in *Preiser* was whether prison inmates were illegally deprived of "good time".

8. Most courts which have considered the question of whether an action for damages under section 1983 which raises issues which are or could be the subject of state proceedings can be brought only after completion of those proceedings have concluded that such exhaustion is required. They have done so on the basis of two theories. One is that the damage action would be an attempt to "circumvent" habeas corpus. *See* Howard v. Rolufs, 338 F.Supp. 697 (E.D.Mo.1972); Moore v. Frazier, 316 F.Supp. 318 (D.Neb. 1970); Smith v. Logan, 311 F.Supp. 898 (W.D.Va.1970); King v. McGinnis, 289 F. Supp. 466 (S.D.N.Y.1968); Greene v. New York, 281 F.Supp. 579 (S.D.N.Y.1967); Martin v. Roach, 280 F.Supp. 480 (S.D.N.Y. 1966); Lombardi v. Peace, 259 F.Supp. 222 (S.D.N.Y.1968). The other is that release from custody via a habeas corpus petition is a prisoner's "best remedy" and that he must pursue that remedy, with its exhaustion requirement, before he may bring his damages claim. *See* Alexander v. Emerson, 489 F.2d 285, 286 (5th Cir. 1973); Howard v. Rolufs, *supra*; Moore v. Frazier, *supra*; Smith v. Logan, *supra*; Greene v. New York, *supra*; Lombardi v. Peace, *supra*.

*Preiser*, nevertheless, is highly relevant to the issue under discussion. The Court's holding demonstrates the importance of preserving the integrity of the writ of habeas corpus, in its traditional context,[9] from circumvention of the limitations placed upon the writ. The writ of habeas corpus is, after all, the more narrow and specific remedy.[10] The Court also was concerned with maintaining due respect toward principles of comity and federalism by avoiding interference with matters of intense and intimate state concern. This view is also expressed in Younger v. Harris, *supra*, and Samuels v. Mackell, *supra*. In *Younger* and *Samuels* the Supreme Court held that to preserve proper respect for our federal system, and additionally, to prevent undue interference with the orderly administration of criminal justice, federal suits for equitable relief must be dismissed if they concern the same matter as is the subject of an ongoing state prosecution, and would interfere with that prosecution.

Despite the difference in the form of relief being sought, a suit for money damages under section 1983 may also have a substantially disruptive effect upon contemporary state criminal proceedings, and may also undermine the integrity of the writ of habeas corpus. Where the federal court, in dealing with the question of damages caused by violation of civil rights, would have to make rulings by virtue of which the validity of a conviction in contemporary state proceedings would be called in question, the potential for federal-state friction is obvious.[11] The federal ruling would embarrass, and could even intrude into, the state proceedings.[12] Questions concerning the effect to be given the federal ruling in the state courts might be difficult ones, and could lead to delay, or even derailment of the course of the state action. It is not impossible that circumstances might arise where a federal judgment for damages could be used by a state defendant to obtain his release from, or prevent, his incarceration, thus presuming upon, if not preempting, the province of the Great Writ.[13] Other disruptive consequences can be envisioned as, for example, use of a 1983 suit to circumvent state discovery limitations, or to harass witnesses. *See* Del-

---

In our own case of Still v. Nichols, 412 F. 2d 778 (1st Cir. 1969) after finding that claims for equitable relief submitted by a a parole violator must be dismisesd for failure to exhaust state remedies, we said the following concerning his claim for monetary relief:

"It has been held that the same dismissal must be ordered with respect to a claim for money damages . . . . This is not to say that state action must always precede a suit for civil rights. Monroe v. Pape . . . . However, a damage action cannot be prosecuted as a guise or method of obtaining release from custody, but must await the complainant's release through other channels." 412 F.2d at 779.

On the other hand, some courts have adopted neither the circumvention nor the best remedy approaches, but have instead reached an entirely opposite conclusion. They have without detailed theorizing found that no exhaustion requirement should be imposed. *See* Kalec v. Adamowski, 406 F.2d 536 (7th Cir. 1969); Edwards v. Schmidt, 321 F.Supp. 68 (W.D.Wis.1971); *see also* Gaito v. Strauss, 249 F.Supp. 923, 930 (W.

D.Pa.), aff'd on different grounds, 368 F.2d 787 (3rd Cir. 1966), cert. denied, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 139 (1967); *cf.* Ray v. Fritz, 468 F.2d 586 (2d Cir. 1972); Ney v. California, 439 F.2d 1285 (9th Cir. 1971).

9. Although habeas may be used to secure relief relating to the *conditions* of confinement, Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), as well as its duration, the *Preiser* circumvention rule was meant only to protect the integrity of the latter, traditional, function of habeas, *see* 411 U.S. at 499–500, 93 S.Ct. 1827.

10. *See* 411 U.S. at 489–490, 93 S.Ct. 1827.

11. *See generally*, Comment, State Prisoners' Suits: Proper Forum, Choice of Remedy, and Effect of Judgment, 51 Texas L.Rev. 1364 (1973).

12. *Cf.* Steffel v. Thompson, 415 U.S. 452, 476, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (White, J., concurring), Samuels v. Mackell, 401 U.S. 66, 72, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

13. *See* Comment, State Prisoners' Suits, *supra* at 1403.

linger v. Mitchell, 143 U.S.App.D.C. 60, 442 F.2d 782, 785 (1971).

It is nonetheless unfortunate that a civil rights litigant might be forced to await the conclusion of state criminal proceedings against him before he may attempt to vindicate his federal rights in a federal forum. But while any delay of this type is costly, the fact of the matter is that federal relief in the form of immediate or more speedy release from incarceration, normally a matter of even more pressing concern, is subject to just this sort of delay. Moreover, just as the exhaustion requirement of habeas corpus is subject to the condition that exhaustion is not necessary where "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b), the requirement that state criminal proceedings be completed before suit for damages may be instituted may be inapplicable where the result might be that the right to sue would be lost entirely, as for example, where the applicable statute of limitations would run, *cf.* Still v. Nichols, 412 F.2d 778 (1st Cir. 1969).[14] In any event, whatever cost to the litigant may be involved, there is an overriding cost that is avoided. Damage to the smooth operation of the administration of criminal justice, injury to the proper workings of a federal system, and undermining of congressional concern with the functioning of the writ of habeas corpus—all are harms which are prevented by the requirement that a civil rights damage action be deferred.[15]

The touchstone for any decision to defer a civil rights damage action which is parallel to state criminal proceedings is whether the federal court will be making rulings whose necessary implication would be to call in question the validity of the state conviction. Thus, not every situation where a section 1983 action is related to contemporaneous state proceedings will be one where completion of the state proceedings will appropriately be a prerequisite to trial of the federal claim. A denial of constitutionally protected rights may have occurred in the course of the events leading up to trial, yet may only be marginally relevant, or may even be entirely irrelevant, to the trial and appeal. For example, a false arrest, or an illegal search and seizure, or wiretap, may constitute a compensable wrong while not undergirding the validity of the criminal conviction to which it might be related.[16] In such a situation both the right infringed and the measure of compensable damage may be assayed wholly apart from the question of whether conviction was proper. The violation of Fourth Amendment or privacy rights may exist independently, and may be dealt with without concern with the question of guilt or innocence or of whether a fair trial was provided.

A more difficult question might arise where it is claimed that a violation of federal rights occurred which constituted "harmless error" at trial. Here a finding may be made that rights were violated without questioning the validity of conviction. But, particularly where only nominal damages could be assessed, a federal court might properly be reluctant to proceed, aware that the characterization of an error at trial as harmless might not be made with assurance, and could change as the state cause made its way through appellate courts.

14. *See also* Odsen v. Moore, 445 F.2d 806 (1st Cir. 1971).

15. Another advantage to deferring the civil rights damage action in this setting is judicial economy. Once the state criminal process is completed, both habeas corpus and civil rights damage relief can be sought simultaneously in the federal district court. It may even be possible to consolidate the suits. The burden upon both the prisoner and his adversaries, as well as upon the federal courts, is consequently reduced. Moreover, the amount of damages that may be recoverable will in many cases be more easily and surely determined, and attack for failure to mitigate, or for speculativeness will be more difficult.

16. *See* Mulligan, v. Schlachter, 389 F.2d 231, 232 (6th Cir. 1968).

On the other hand, where the effect of the error can be confidently said to be clearly harmless in the sense of not affecting the validity of conviction, but was the result of such outrageous or malicious motivation that there would exist a real possibility that punitive damages would be awarded,[17] a federal court might properly permit the civil rights action to go forward immediately. As in any area of the law, marginal cases will arise, calling for the exercise of a delicate judgment. The first question will be whether or not the validity of a state criminal conviction which has not yet completed the full course of both trial and appeal [18] will be a necessary issue in the federal action. If so, the federal action must be either dismissed or held in abeyance until the state proceedings are completed. If the answer to this first question is unclear, then the federal court may properly weigh the potential harm to comity and the orderly administration of criminal justice against the potential harm to the litigant, in reaching its decision.

From the foregoing analysis it is clear that dismissal of the equitable claims in these two instant cases was proper. Dismissal of the damage action in No. 73–1194 was also proper, since that suit would manifestly require the court to rule upon the validity of the state criminal conviction. However, the question of dismissal of the damage claim in No. 73–1005 is much less certain. Guerro's suit involves matters which may not require the court to consider the question of the legality of his conviction. The record is quite sparse, and the matter not free from doubt. We therefore remand to the district court for consideration in light of what we have said today.

## II. OTHER MATTERS

The complaint in No. 73–1005 named as defendants Justice Meagher of the Superior Court of Massachusetts, the District Attorney of Worcester County, two officers of the Worcester Police Department, and one named state police officer and several unnamed state police officers. The district court dismissed, inter alia, on various grounds of immunity. On motion for summary affirmance under Local Rule 12, we affirmed the dismissal of the complaint as to defendant Meagher on grounds of judicial immunity. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). However, we declined to summarily affirm the dismissal of the action as to the remaining defendants. We now conclude that the dismissal as to these remaining defendants on the grounds of immunity at this preliminary point in the proceedings was in error.

Undeniably, the complaint upon which this action is based is confusing and verbose. Nevertheless, it may be read as alleging that the Worcester police officers acted in bad faith in knowingly obtaining the wiretap order and a search warrant on the basis of perjured testimony, and that the Worcester district attorney and the state police officers [19] cooperated with them in these ventures. As the Supreme Court has said in reversing the dismissal of an action brought under section 1983, "[such allegations] however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence." Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30

17. *Cf.* Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965).

18. We would assume that in the usual case the fact that post conviction relief had not been pursued and exhausted would not be relevant so long as direct appeal had run its course, *cf.* Makarewicz v. Scafati, 438 F.2d 474, 476 (1st Cir. 1971) (for purposes of exhaustion of remedies for federal habeas corpus, utilization of post conviction reme-

dies is not necessary where the relevant issue had been reviewed on direct appeal by the state supreme court).

19. The state police defendants contend that the facts alleged in the complaint do not implicate them in the supposedly illegal wiretap. This argument, however, is based upon an interpretation of the complaint which we find to be premature at this stage.

L.Ed.2d 652 (1972). Moreover, *Haines* requires that we read the allegations of a pro se complaint liberally, and not dismiss the action unless it appears "beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief." 404 U.S. at 521, 92 S.Ct. at 596, quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). While plaintiff's allegations may perhaps turn out to be insubstantial, we cannot make such a determination and apply the test for official immunity recently set out in Scheuer v. Rhodes, 416 U.S. 232, 247–249, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974)[20] at this stage of the proceedings.

 The police defendants argue, however, that in wiretapping the plaintiff's telephone, they were acting pursuant to a valid court order and are therefore immune from suit under Dunn v. Gazzola, 216 F.2d 709 (1st Cir. 1954), and Francis v. Lyman, 216 F.2d 583 (1st Cir. 1954).[21] This argument ignores the fact that the wiretap order was allegedly obtained by the defendants in bad faith and on the basis of perjured testimony. Such conduct would not come within the official immunity doctrine enunciated in the above cases, which both place emphasis on the good faith of the law enforcement officials there involved. *See also* Pierson v. Ray, *supra*, 386 U.S. at 557, 87 S.Ct. at 1219. In a similar vein, the Worcester County district attorney argues that prosecutors enjoy an absolute immunity from suit when acting within their quasi-judicial capacity. Assuming this proposition to be sound, we note that this absolute immunity does not extend to acts essentially unrelated to the judicial process, i. e., acts done in the prosecutor's investigatory role. *See* Robichaud v. Ronan, 351 F.2d 533 (9th Cir. 1965); Lewis v. Brautigam, 227 F. 2d 124 (5th Cir. 1955); *see also* Littleton v. Berbling, 468 F.2d 389, 410 (7th Cir. 1962), *vacated as moot*, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974). In the present case, it is alleged that the district attorney cooperated with the police defendants in obtaining a search warrant based on perjured testimony. As stated in Lewis v. Brautigam, *supra*, 227 F.2d at 129, "[i]t would be wrong to hold the officers liable but the State's Attorney exempt."

[9] We also find no merit in the suggestion that the immunity from suit under section 1983 accorded to municipal bodies and their police departments under the doctrine of Henschel v. Worcester Police Dept., 445 F.2d 624 (1st Cir. 1971) can be extended so as to insulate police officers from liability merely because of the provisions of Mass.G.L. ch. 41 § 100, which provides for indemnification of such officers by their public employers for expenses or damages incurred in a law suit arising out of the performance of their duties. This would mean that any state or municipality could in effect make section 1983's damage remedy inoperative simply by passing a similar indemnification statute, and we do not believe that Congress, by limiting liability under section 1983 to "person[s]", intended to allow such a veto power to be exercised over its historic enactment.

20. "[I]n varying scope, a qualified immunity is available to officers of the executive branch of Government, the variation dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords basis for qualified immunity of executive officers for acts performed in the course of official conduct."

21. This court in *Dunn* stated that, "It then would seem to be a preposterous result if the superintendents of the two penal institutions were held liable in damages for false imprisonment, when all they did, in the line of official duty, so far as is charged in the allegations of the complaint, was to execute in good faith a judicial warrant of commitment issued by a court of general jurisdiction and in all respects fair and regular on its face." 216 F.2d at 588.

The dismissal of the action under 42 U.S.C. § 1985(3) [22] is affirmed, since the complaint makes no allegation of any class-based discrimination against the plaintiff. Griffin v. Breckinridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), Bricker v. Crane, 468 F.2d 1228 (1st Cir. 1972), cert. denied, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973).

For the reasons set forth above the dismissal by the district court of the complaint in No. 73–1194 is affirmed.[23] The dismissal of the complaint in No. 73–1005 is affirmed as to the action under 42 U.S.C. § 1985(3), and as to the requests for declaratory relief under 42 U.S.C. § 1983, but is reversed as to the claim for damages under section 1983. The case is remanded for further disposition not inconsistent with this opinion.

22. While the complaint does not so specify, it is clear that this is the subsection relied upon.

23. The court has been advised by amicus that appellant Andrews has very recently had his conviction reversed on appeal. Our decision in the instant case means only that the district court was correct in dismissing Andrews' case under the then existing circumstances. Whether this appellant is now free to initiate suit again in federal court is a matter upon which we intimate no view.