Dale Andrew HALL, Plaintiff,

v.

FLATHEAD COUNTY ATTORNEY Theodore Lympus, as County Attorney of Flathead County and individually, et al., Defendants.

No. CV 79-27-M.

United States District Court,
D. Montana,
Missoula Division.

Sept. 17, 1979.

As Amended Sept. 19, 1979.

Richard Volinkaty, Morales, Volinkaty & Harr, Missoula, Mont., for plaintiff.

Ronald A. Bender, Worden, Thane & Haines, Missoula, Mont., Jonathan B. Smith, Deputy County Atty., Flathead County, Kalispell, Mont., for defendants.

OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

An altercation occurred between plaintiff and certain police officers when plaintiff was leaving a bar in Kalispell. Plaintiff was arrested and subsequently charged with aggravated assault, a felony,[1] obstructing a police officer, a misdemeanor,[2] escape, a misdemeanor,[3] and resistance to arrest, a misdemeanor.[4] The dispute revolves around the question of whether plaintiff was lawfully arrested and prosecuted, or whether the arresting officers caused him to be prosecuted to shield their own illegal acts. In count three of the complaint, the county attorney and his deputy (hereafter referred to as "the defendants") are charged with misconduct in the prosecution of plaintiff.

The defendants moved to dismiss on the ground that, as public prosecutors, they have an absolute immunity which bars the action. The problem posed by the motion is whether the acts complained of were done by defendants in a quasi-judicial capacity on the one hand or as policemen or investigators on the other. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Aside from the broad conclusions alleged, the claims made by plaintiff may be summarized as follows:

The statements made by policeman Birk contained inconsistencies which the defendants know about but have failed to investigate. The plaintiff offered to take a polygraph test if policeman Birk would take one; Birk refused on the basis of police department policy and no polygraph evidence was developed. Defendants have refused to investigate the possibility of criminal conduct of the police officers in relation to the happenings involved. Defendants were aware of police brutality. Defendants gave inaccurate statements to the press.

The net effect of all of this is that, except as to the press matter, the defendants are relying on, as they have in past and will in future prosecutions, police officers' versions of the happenings rather than plaintiff's version. If what plaintiff says is true, it does not appear here that the defendants did any more than accept the evidence which the police brought to them and, on the basis of that evidence and without adequate investigation, filed and prosecuted criminal cases against plaintiff. The problems of what evidence to believe, what evidence to present, what avenues of inquiry to pursue, and what cases to file, lie at the heart of the prosecutorial function, and decisions as to them are the kinds which ought not be the subject matter of second-guessing in a civil rights action. The Court in *Imbler v. Pachtman,* 424 U.S. 409, 424–25, 96 S.Ct. 984, 992, 47 L.Ed.2d 128 (1976), states:

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

My conclusion that the defendants are immune under the rationale of *Imbler* seems to be supported by the cases. In *Hilliard v. Williams,* 540 F.2d 220 (6th Cir. 1976), where immunity was granted, the Attorney General had failed to present or correct misleading evidence of blood on a jacket and advised a witness to testify evasively. Similarly, in *Marlowe v. Coakley,* 404 F.2d 70 (9th Cir. 1968), the defendants, who had

---

1. Mont.Code Ann. § 45–5–202(1)(d) (1978).

2. Mont.Code Ann. § 45–7–302(1) (1978).

3. Mont.Code Ann. § 45–7–306(2) (1978).

4. Mont.Code Ann. § 45–7–301(1)(a) (1978).

knowingly presented perjured testimony and deliberately suppressed exculpatory evidence, were held to be performing an integral part of the judicial process. In *Ney v. California,* 439 F.2d 1285 (9th Cir. 1971), a district attorney who knowingly used altered tapes in a prosecution was held to be immune. The acts of defendants here are not of the kind condemned in *Guerro v. Mulhearn,* 498 F.2d 1249 (1st Cir. 1974), where the prosecutor assisted in illegal wire tapping; in *Dodd v. Spokane County,* 393 F.2d 330 (9th Cir. 1968), where threats of assaults and violence were made to force a person to testify in a criminal case; nor in *Robichaud v. Ronan,* 351 F.2d 533 (9th Cir. 1965), where a prosecutor directed that a 16-year-old girl be intimidated in various ways to force her to confess.

The allegations that defendants gave inaccurate stories to the press do not form the basis for a civil rights action. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Count III of the amended complaint is dismissed. Plaintiff, if so advised, may file an amended complaint as to Count III within twenty (20) days. If specific facts are wrapped up in the conclusions alleged in the first amended complaint, the plaintiff now has an opportunity to state them. In this connection, I call counsel's attention to Fed. R.Civ.P. 11.

Defendants, other than Theodore Lympus and Stewart Pearce, shall answer the amended complaint within twenty (20) days.