William **JOHNSON**, Plaintiff,

v.

William H. **FAUVER** and Edward P. **O'Lone**, Defendants.

Civ. A. No. 82–2657.

United States District Court, D. New Jersey.

March 23, 1983.

William Johnson, pro se.

Robert A. Shire, Deputy Atty. Gen., Trenton, N.J., for defendants.

## OPINION

GERRY, District Judge.

Plaintiff, an inmate at Leesburg State Prison, brings this action under 42 U.S.C. § 1983, claiming that prison officials violated his federal constitutional rights by denying him classification to minimum custody.

The State of New Jersey incarcerated plaintiff after his conviction on several counts of violation of N.J.S.A. 24:18–1 *et seq.*, relating to the possession, manufacture, distribution or possession with intent to distribute narcotic or controlled dangerous substances.

The New Jersey Department of Corrections has promulgated regulations governing reduced custody eligibility. The regulations vest the Institutional Classification Committee with broad discretion whether to classify an inmate to reduced custody, provided however that he is not disqualified from consideration by virtue of conviction for certain specified crimes.

Standard 853.6(E), formerly standard 853.281, disqualifies from reduced custody consideration any inmate convicted of drug offenses under N.J.S.A. 24:18–1, 21–19, and 21–20, where the amount of the drug or controlled substance involved in the offense exceeds any amount normally associated with personal consumption, so that a commercial motive for the offensive activity may be inferred. In the vernacular, this standard has come to be known as the "drug profiteer" disqualification from minimum custody eligibility.

The Leesburg State Prison Classification Committee has apparently obtained authority from the Superintendent of Prisons to grant waivers to certain individuals who otherwise would not be eligible for minimum custody status under standard 853.-6(E).

Plaintiff Johnson apparently falls within the "drug profiteer" disqualification from minimum custody eligibility and alleges that the prison authorities have accordingly denied him access to minimum custody status. Johnson's complaint attacks the standard itself *and* the administration of the waiver policy as violations of the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. As for relief, plaintiff prays for a declaratory judgment that the standard and the waiver system are unconstitutional, an injunction commanding prison officials to reclassify plaintiff to minimum custody and damages in the amount of $50,-000.

Although this complaint is cast as a civil rights action under 42 U.S.C. § 1983, defendants contend that the action partakes of the nature of an application for a writ of habeas corpus. Recognizing the absence of any allegation that plaintiff has presented his claims to an appropriate state court, the defendants move to dismiss the complaint for a failure to exhaust state remedies, as would be required under 28 U.S.C. § 2254.

This is defendants' second motion to dismiss the complaint for a failure to exhaust state court remedies.

In their original motion, defendants argued that plaintiff's reclassification to minimum custody would necessarily result in the shortening of his sentence—apparently

because inmates in minimum custody enjoy opportunities to earn work credits unavailable to inmates in higher custody classifications. N.J.S.A. 30:4–92. Because of the connection of minimum custody status with a reduced sentence, defendants argued that the entire complaint, including plaintiff's claim for damages, constitutes a challenge to the duration of his confinement. As such, the court was obliged, in defendants' view, to treat it as a petition for habeas corpus under the rule of *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973).

This court denied defendants' original motion, holding that the statute under which inmates earn work credits, N.J.S.A. 30:4–92,[1] does not automatically confer upon inmates in minimum custody any additional work credits. That is, the defendants' characterization of the instant case as a habeas corpus matter rested upon a premise unsupported by the statute: that reclassification to minimum custody status necessarily entails increased work credits and results in a shorter sentence.

The court therefore denied the motion, without squarely deciding the issue of whether, *assuming* that attainment of minimum custody *did* entail a shorter sentence, the instant suit should proceed as a habeas, or alternatively, a § 1983 claim.

By letter to the court dated November 29, 1982, defendants conceded the accuracy of the court's reading of N.J.S.A. 30:4–92. The state now, however, attempts again to establish an equation of minimum custody status with award of additional work cred-

its. The state's vehicle is an affidavit by Michael R. Wiechnik, Chief of the Bureau of Classification Services, New Jersey Department of Corrections. Mr. Wiechnik affirms that the Department generally, perhaps always, does award the permissible additional work credits to any and all inmates who attain minimum custody classification:

> The Department's policy has always been that an inmate may be classified minimum custody if and only if he is considered sufficiently trustworthy to be employed in an honor camp, farm or detail (the condition in the statute for earning additional work credits in minimum custody[2]). Thus, it has been the Department's policy that an inmate classified minimum security automatically receives the additional remission time authorized by N.J.S.A. 30:4–92.

On the strength of the quoted affirmation, defendants again press their argument that the instant suit attacks the *duration* of confinement and thus represents a habeas petition.

As before, the state relies upon *U.S. ex rel. Rines v. Beister,* No. 80–2293 (3d Cir. April 29, 1982) (*per curiam*) to establish the dispositive significance of its asserted equation of minimum custody and a reduced prison term.

In *U.S. ex rel. Rines v. Beister,* No. 80–2293 (3d Cir. April 29, 1982) (*per curiam*), the court treated as a habeas petition a complaint by a New Jersey inmate that New Jersey prison officials had failed to comply with detainers lodged against plain-

---

1. 30:4–92. Inmates of institutions to be employed in productive capacity; compensation
   The inmates of all correctional and charitable, hospital, relief and training institutions within the jurisdiction of the State Board shall be employed in such productive occupations as are consistent with their health, strength and mental capacity and shall receive such compensation therefor as the State Board shall determine.
   Compensation for inmates of correctional institutions may be in the form of cash or remission of time from sentence or both. Such remission from the time of sentence shall not exceed 1 day for each 5 days of productive

occupation, but remission granted under this section shall in no way affect deductions for good behavior or provided by law.
   In addition, all inmates classified as minimum security and who are considered sufficiently trustworthy to be employed in honor camps, farms or details, shall receive further remission of time from sentence at the rate of 3 days per month for the first year of such employment and 5 days per month for the second and each subsequent year of such employment. Amended by L.1956, c. 38, p. 81, § 1, eff. June 1, 1956; L.1959, c. 52, p. 159, § 1.

2. Parenthetical remark by the court.

tiff by Pennsylvania authorities seeking plaintiff's return to Pennsylvania to answer criminal charges. Plaintiff's theory was that New Jersey's failure to comply with the detainers deprived plaintiff of his right to a speedy trial on Pennsylvania charges; plaintiff sought injunctive relief and damages under 42 U.S.C. § 1983, as well as a writ of habeas corpus.

The *Rines* court held the claim for injunctive relief a matter in the nature of habeas corpus, and therefore subject to the exhaustion requirements of 28 U.S.C. § 2254. More important, with regard to the § 1983 damages claim, the court declared that dismissal was proper where the § 1983 claim involved a challenge to the same actions that formed the basis for plaintiff's habeas corpus petition.

Defendants distill from *Rines* the proposition that exhaustion of remedies is appropriate when decision of a § 1983 claim necessarily decides the same issue that would comprise an attack upon the validity, fact or duration of confinement. For defendants, a suit brought to obtain minimum custody represents just such a claim; a decision that an inmate has unconstitutionally been denied minimum, and that he is entitled to minimum, will result in his obtaining increased work credits and thereby a shorter sentence.

For the reasons that follow, the court believes the defendants' position untenable.

## I. The Relationship Between Minimum Custody and The Shortening of An Inmate's Sentence.

■ Notwithstanding the affidavit of Wiechnik, the court will adhere to its view that the instant complaint states a § 1983 claim not subject to exhaustion.

In *Preiser v. Rodriguez,* the Supreme Court held that a prisoner suit to restore remission time credits that the penal authorities had revoked represented a habeas corpus petition, not a civil rights suit; such a claim effectively attacked the duration of confinement, a matter within the province of the great writ.

In the instant case, plaintiff does not seek any retroactive award of good-time credits. Indeed, the relief plaintiff seeks will not, on its face, shorten his sentence one day. But the state contends that an order finding unconstitutional the state's denial of minimum custody to plaintiff will effectively reduce plaintiff's stay in prison; the state urges that minimum custody, once conferred, automatically bestows additional work credits upon the fortunate inmate.

The connection between plaintiff's success in the instant suit and a shortening of the duration of his confinement is, however, legally remote and speculative at best.

The affidavit of Wiechnik does not forge the relationship between minimum custody and a shorter sentence—or perhaps more appropriately between invalidation of standard 853.6(E) and/or its waiver, on the one hand, and a shorter sentence on the other— that defendants seek to establish.

The affidavit sets out a purported policy that all minimum custody inmates receive the additional work credits, but it has several shortcomings.

■ First, by its terms the affidavit says nothing about awarding credits when no work has actually been performed. Both the federal and state courts appear to hold that New Jersey prisoners enjoy no right to an award of work credits unless they actually perform work. *Trantino v. Dept. of Corrections,* 168 N.J.Super. 220, 402 A.2d 947 (App.Div.1979); *Rowe v. Fauver,* 533 F.Supp. 1239 (D.N.J.1982).

■ It appears, in turn, that inmates in general have no right to an opportunity to work; that is, prisoners have no substantive federally created right to work opportunities, *Rowe v. Fauver,* 533 F.Supp. 1239, 1242 (D.N.J.1982); see *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); nor does the state statutory scheme create a liberty or property interest in a right to work, despite statutory language that all inmates "shall be employed." N.J.S.A. 30:4–92; *Rowe, supra,* 533 F.Supp. at 1243–45. Since the clear

"shall be employed" language of the statute does not create a liberty or property interest on behalf of all inmates, it is at least arguable that the part of N.J.S.A. 30:4–92 providing additional credits to minimum custody inmates likewise creates no constitutional interest and enforceable right to work.

This court intimates no view on the latter issue. The court notes only that a federal court order awarding an inmate minimum custody would leave unsettled the question of the inmates' right to begin earning additional work credits; that is, if these statutory provisions create no enforceable right to work, then even a federal court decision that an inmate has wrongfully been denied minimum custody does not equip the victorious plaintiff with a ruling he might use in a state proceeding to establish a prospective entitlement to a given number of work credits (and hence a shorter sentence). The state might still divine an unassailable basis for denying the inmate in minimum custody the opportunity to earn work credits. As for credits the inmate might have earned had he been properly classified in the first instance, the state will be free to argue that the law does not entitle the inmate to work credits except in exchange for work actually performed. *See Zink v. Lear,* 28 N.J.Super. 515, 101 A.2d 72 (App.Div.1953). This court expresses no view on the merit of such an argument and is content merely to observe that the question raised might properly come before a state tribunal on a petition for habeas corpus relief.

Of course, in the instant case, the state might argue that the affidavit submitted in support of its motion effectively creates or recognizes, as a matter of state law, the right of prisoners in minimum custody to earn additional work credits. *See Helms v. Hewitt,* 655 F.2d 487, 495 (3d Cir.1981). The state has not made such an argument, and in light of *Rowe v. Fauver* and *Trantino, supra,* such an argument appears tenuous, or at least evinces some serious shortcomings. In any event, the court thinks that possibility not plausible, at least on the record before the court today.

Alternatively, even assuming that the affidavit created such an enforceable right, the court may construe or segment the complaint in this case to avoid decision of that issue or issues which might entail an invasion of the realm of habeas corpus.

Plaintiff's complaint seeks a declaratory judgment that the standard 853.6(E) is unconstitutional, or that the waiver of that standard as administered by the prison authorities is unconstitutional. Plaintiff also asks injunctive relief commanding prison officials to reclassify him to minimum custody; finally plaintiff asks $50,000 in damages for the violation of his constitutional rights.

The court can assess and declare constitutionally infirm the standard and/or the waiver policy without necessarily ordering the reclassification of plaintiff. Such a declaratory judgment would not necessarily obligate the prison authorities to reclassify plaintiff; defendants would arguably remain free to classify him to "maximum security" on some other constitutional basis. *See Spring v. Mulcahy,* Civ. No. 77–1145, May 2, 1978 (D.N.J.) (Lacey, J.). Similarly, the court may award damages for an invasion of a right to due process or equal protection without deciding plaintiff's entitlement to minimum custody classification. At least to the extent that the standard or waiver policy impermissibly classifies plaintiff as ineligible for minimum consideration, or constitutes a procedure for determining his eligibility that denies him due process, it would appear that some compensable wrong arises other than a deprivation of minimum custody itself. *See Wolff v. McDonnell,* 418 U.S. 539 at 554–55, 94 S.Ct. 2963 at 2973–74, 41 L.Ed.2d 935. Under *Wolff* and *Preiser,* the court appears free to retain jurisdiction over those parts of a complaint that state a claim for invasion of rights—procedural or otherwise—that differ from the right to remission credits.

In short, the state has not convinced this court that a decision in plaintiff's favor entitling him to minimum custody necessarily entails a shortened duration of confinement.

Alternatively, even if one accepts the equation of minimum custody reclassification with a shorter sentence, it is within the court's power to assess and declare the constitutional validity of the standard and waiver at issue without ordering a reclassification of plaintiff to minimum custody. *Wolff, supra.*

## II. *Inapplicability of the Exhaustion Rule of* U.S. ex rel. Rines v. Beister.

Even were the court not to dismiss or segment off a claim for reclassification, and assuming *arguendo* that reclassification to minimum custody would, as the state argues, entitle plaintiff to additional work credits prospectively, the court would still hold that the complaint states a civil rights complaint not subject to the exhaustion rule of *Preiser v. Rodriguez.*

As suggested in the court's previous opinion, the rule of *Preiser* does not fully explain the proper disposition or characterization of a claim that attacks both the conditions *and* the duration of confinement. The defendants clearly view the instant complaint as stating such a claim. However, defendants conclude that subsequent decisions of the First and Third Circuits have settled this somewhat vexing question. Specifically, defendants rely upon the formulation in *U.S. ex rel. Rines v. Beister, supra,* which in turn relied upon *Guerro v. Mulhearn,* 498 F.2d 1249 (1st Cir.1974). In *Rines,* the court stated that insofar as a § 1983 complaint seeks damages but involves a challenge to the same actions that form the basis for a habeas corpus claim, dismissal for failure to exhaust state remedies is proper.

Clearly it is the state's view that plaintiff's attack on the classification standard and waiver which denies him minimum custody could also form the basis for a habeas petition, inasmuch as an award of minimum custody would in the state's eyes shorten plaintiff's time in prison.

The court does not agree with defendants that *Rines* and *Guerro* necessarily govern the instant case, even if defendants' several assumptions about the ramifications of a federal court order in the instant case—assumptions the court has found unwarranted—were accepted as true.

Neither *Rines* nor *Guerro,* upon which *Rines* relies, involved any substantial challenge to the conditions of confinement. In *Rines,* plaintiff sought to establish that New Jersey's failure to comply with a Pennsylvania detainer had deprived plaintiff of his Sixth Amendment right to a speedy trial. Had the court adjudicated such a claim in plaintiff's favor, presumably the question of the validity of the detainer would also have been resolved. A challenge to the validity of a detainer is commonly recognized as a habeas claim, and so a decision on a claimed deprivation of speedy trial Sixth Amendment rights would represent little more than a decision on a habeas matter. But most important, the alleged denial of Sixth Amendment rights had *nothing whatsoever to do* with plaintiff's conditions of confinement. In *Rines,* there simply *was no attack* upon the conditions of confinement.

Similarly, in *Guerro,* plaintiff claimed that certain state officials illegally wiretapped his telephone and used resulting evidence at his criminal trial. Plaintiff unsuccessfully moved to suppress the evidence at trial; after conviction, he brought suit under § 1983 for a violation of his Fourth Amendment rights. The court of appeals in *Guerro v. Mulhearn* affirmed the district court's dismissal of the civil rights complaint, holding it subject to exhaustion as a habeas corpus petition that effectively attacked the validity of plaintiff's state court conviction. The court emphasized that decision of plaintiff's damages claim, as well as his prayers for declaratory and injunctive relief, would entail a decision on the validity of the conviction.

As with *Rines, Guerro's* claim of a Fourth Amendment violation arising from the illegal wiretap contained not a hint of an attack upon the conditions of his confinement.

■ A § 1983 civil rights complaint lies when a prisoner attacks something other than the validity, fact or duration of his

confinement. *Preiser v. Rodriguez, supra.* That "something other" consists of the conditions of confinement—which must mean, if nothing else, the regime under which the prisoner lives, the treatment he experiences, the procedures that govern or shape the course of that treatment.

The prisoner in the instant suit challenges the correctional regulations governing the classification of prisoners into levels of custody, and the actions of the prison classification committee in applying those rules, including waivers of those rules, to his case. Neither party has presented a comprehensive list of the differences in conditions of confinement between minimum and maximum custody. But one fairly infers from the submissions that reclassification to minimum entails substantial improvement in the conditions of every day existence for the prisoner. For example, plaintiff indicates that in minimum custody inmates enjoy greater access to phones and better visitation privileges, furloughs, and broader employment opportunities including work release. *See Spring v. Mulcahy,* Civ. 77–1145, (D.N.J., May 2, 1978), slip op. PP 2–3 (Lacey, J.).

Thus plaintiff's complaint challenges the denial of his application for minimum custody, a denial that deprives him of this host of attendant improved living conditions; a fair reading of the pleadings discerns a challenge to the fairness of the rules and methods by which the prison authorities effected that denial. Even if one assumes that a shortening of sentence would emerge as a by-product of success in the instant case, that consequence does not diminish the authentic and substantial challenge to conditions of confinement that this suit presents. In both *Rines* and *Guerro,* there was no such challenge to the conditions under which the prisoner lived, nor to the rules and procedures that determined what set of conditions and opportunities he would face. Rather, in those cases there was one, and only one, matter for decision: whether a given practice which resulted in or influenced the fact or duration of confinement, was legal. In *Guerro,* it was an asserted police invasion of Fourth Amendment rights leading to evidence used to convict defendant; in *Rines,* it was the validity of a detainer. Thus, decision in those cases would have had one essential result: to declare constitutionally infirm a conviction or a given length of confinement. At the same time, such a decision would have had no relation to the conditions of confinement.

The distinction we draw between the instant case and *Rines* finds support in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* the Supreme Court considered the application of the *Preiser* rule of exhaustion to a prisoner challenge to the procedures for disciplinary proceedings within the institution. In *Wolff,* prison disciplinary proceedings had resulted, among other things, in the revocation of good time remission credits that the disciplined inmate had already earned. In their complaint, plaintiffs alleged that the disciplinary proceedings did not comport with procedural due process; for relief, plaintiffs sought an injunction reforming the procedures, and restoring the work credits that adverse disciplinary findings had erased; plaintiffs also requested damages for an invasion of their constitutional rights to due process.

Concurring with the court of appeals, the Supreme Court held the restoration of revoked remission credits foreclosed by *Preiser,* as a matter going to the duration of confinement. But the claims for damages and for prospective injunctive relief reforming the procedures stated a claim that did not run afoul of *Preiser.*

While the *Wolff* court subjected the claim for restoration of work credits to habeas corpus exhaustion requirements, the court simultaneously recognized that a federal decision holding the disciplinary proceedings in which such credits were revoked constitutionally infirm might have implications for a state habeas corpus proceeding in which prisoners subsequently would seek to recover those lost credits. The court seemed to approve such a result.

The complaint in this case sought restoration of good time credits, and the Court of Appeals correctly held this relief foreclosed under *Preiser,* but the complaint also sought damages; and *Preiser* expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. 411 U.S. at 499, n. 14, 93 S.Ct. at 1841, n. 14... [12]

---

[12] One would anticipate that normal principles of *res judicata* would apply in such circumstances.

*Wolff v. McDonnell,* 418 U.S. at 554, n. 12, 94 S.Ct. at 2974, n. 12, *citing Preiser v. Rodriguez,* 411 U.S. at 499, n. 14, 93 S.Ct. at 1841, n. 14.

Thus, a plausible reading of *Wolff* discerns permission for the federal courts to find liability and damages upon the *same grounds* as are contemporaneously, or later, advanced in state court on a habeas corpus petition.

■ In light of *Wolff,* it seems perilous to read the *Rines* case too broadly. That is, *Rines* should not preclude a civil rights suit any time the grounds for the civil rights and the habeas complaint emerge from essentially the same constitutional infirmity. For in *Wolff,* the prisoners suffered a deprivation of due process rights arising from an assertedly unconstitutional form of disciplinary proceeding. Likewise, the prisoners lost earned remission time by operation of that same constitutionally flawed procedure. The court in *Wolff* held that the federal courts could evaluate the constitutionality of the disciplinary procedure without deciding the plaintiffs' entitlement to a restoration of remission time—leaving the question of restoration of lost credits to a habeas application brought in the state courts. At the same time, the *Wolff* court recognized that normal principles of *res judicata* might apply; thus the federal court judgment might effectively decide some or all of the questions of law or fact that would arise in the state habeas corpus proceeding—precisely the result that the state's reading of *Rines* would forbid.

Thus, there appears a tension between *Wolff* and *Rines,* resolvable by our view that *Rines* does not necessarily apply to a situation in which the prisoners' constitutional attack challenges both the conditions and ultimately the duration of confinement, as in *Wolff.*

Thus, the court finds the rule of *Rines* inapplicable to the case at bar in which plaintiff's complaint does launch a substantial attack upon the conditions of confinement.

For all the foregoing reasons, the court will deny the defendants' motion to dismiss.