**Edmund W. PRICE**

v.

**Barbara B. RUST, et al.**

**Civ. No. H–81–268.**

United States District Court,
D. Connecticut.

Oct. 27, 1981.

Edmund W. Price, pro se.

Brenda A. Eckert, Peter F. Culver, Hartford, Conn., for defendants.

RULING ON DEFENDANTS'
MOTION TO DISMISS

BLUMENFELD, Senior District Judge.

This is a civil rights action brought pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. §§ 1983, 1985(3) and 1988. Plaintiff Ed-

mund W. Price is a resident of the Town of Simsbury, Connecticut. Defendants are the Town of Simsbury and five of its employees and representatives: Barbara B. Rust, Chairman of the Conservation Commission of the Town of Simsbury; Douglas E. Cooper, Conservation Director of the Conservation Commission of the Town of Simsbury; Natalie C. George, Conservation Officer of the Conservation Commission of the Town of Simsbury; Marshall K. Berger, acting Town Counsel for the Town of Simsbury; and Thomas Hankard, Chief of Police of the Police Department of the Town of Simsbury.

The thrust of plaintiff's complaint is that the defendants violated his constitutional rights by enforcing the Inland Wetlands and Water Courses Regulations of the Town of Simsbury (hereinafter Wetlands Regulations), thereby causing plaintiff to terminate certain "maintenance operations" he was performing on a pond located on his property. Plaintiff does not challenge the constitutionality of either the promulgation or the content of these regulations. Rather, plaintiff challenges the manner in which the regulations were enforced and the results of this enforcement.

More specifically, plaintiff alleges that:

(1) defendants Rust, Cooper, George, Berger and Town of Simsbury caused, or participated in, the surveillance and/or inspection of plaintiff's property in a manner that violated the fourth and fourteenth amendments to the Constitution;

(2) defendants Rust, Berger and Town of Simsbury caused to be instituted and participated in the litigation of state court actions to restrain plaintiff from violations of Simsbury's Wetlands Regulations, which actions have resulted in the diminution of value or decline in marketability of plaintiff's property, thereby constituting a taking of plaintiff's property within the meaning of the fifth and fourteenth amendments; and

(3) defendants Rust's and Town of Simsbury's failure to issue the plaintiff a permit for his maintenance operations constituted a denial of due process within the meaning of the fourteenth amendment.

This case is presently before the court on the defendants' motion to dismiss.

## I. *Defendants' Motion to Dismiss*

The defendants raise three arguments in support of their motion to dismiss: (1) that the complaint fails to state a claim upon which relief can be granted; (2) that the court should dismiss the complaint under the doctrine of equitable restraint; and (3) that the acts alleged are not constitutional violations.

## II. *Equitable Restraint*

The parties in this action are similar to the parties in a pending state action, *Simsbury Conservation Commission v. Edmund W. Price*, Civil No. 253149 (Superior Court Hartford-New Britain). In the state proceedings, the Town of Simsbury sought and obtained a temporary injunction restraining defendant Price from "conducting or continuing to conduct any regulated activity in wetlands or water courses without a permit." *Simsbury Conservation Commission v. Price, supra* (Memorandum of Decision of Judge O'Neill, April 10, 1981). Defendants in this case argue that plaintiff should not be permitted to maintain a case in federal court where he had, or continues to have the opportunity to raise the same constitutional issues in the state proceeding. In support of this position defendants rely on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); including this court's decision in *Aristocrat Health Club of Hartford v. Chaucer*, 451 F.Supp. 210 (D.Conn.1978).

The present case is similar to *Huffman v. Pursue, Ltd.* and *Moore v. Sims* where the state had initiated enforcement proceedings in state court and the defendant attempted to halt those proceedings by seeking injunctive and declaratory relief in a federal forum. The important difference between this case and those cited above, however, is that plaintiff in the instant case seeks *only*

monetary damages. The question we must decide is whether the principles of *Younger-Huffman* should be extended to a civil action for damages alone.[1] For the reasons stated below, we conclude that this is an appropriate case for abstention. These proceedings are therefore stayed, pending resolution of plaintiff's constitutional claims in the state proceedings. Defendants' motion to dismiss is granted in part and denied in part.

## A. *Development of the Doctrine*

On first glance it may appear incongruous to invoke the doctrine of equitable restraint in the context of a suit for damages. The leading cases, however, indicate that the policy reasons underlying the doctrine are not limited to the "traditional principles of equity" nor primarily concerned with those principles.

In *Aristocrat Health Club of Hartford v. Chaucer* this court reviewed the development of the doctrine of equitable restraint.

The leading modern case in this area is *Younger v. Harris, supra*, in which a § 1983 plaintiff, asserting federal constitutional claims, sought to enjoin a prosecution pending against him in a California court. The Supreme Court held that a federal court must not enjoin a pending state criminal prosecution on the basis of constitutional objections, in the absence of extraordinary circumstances, because the defendant can raise his federal claims as defenses in the state court.

The *Younger* decision was grounded in part on traditional principles of equity.... The court in *Younger* also stressed "the notion of 'comity,' that is, a proper respect for state functions," 401 U.S. at 44 [91 S.Ct. at 750], as a basis for its decision. It noted that the federalist system requires the national government to avoid undue or unnecessary interference with the legitimate activities of the States. Therefore, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." 401 U.S. at 45 [91 S.Ct. at 751], *citing Fenner v. Boykin*, 271 U.S. 240 [46 S.Ct. 492, 70 L.Ed. 927] (1926).

*Younger* arose in connection with a state criminal prosecution, and it was recognized that courts of equity had traditionally shown greater reluctance to intervene in criminal cases than in civil cases. *See* 401 U.S. at 55 n.2 [91 S.Ct. at 757 n.2] (Stewart, J., concurring). *Cf. Douglas v. City of Jeannette*, 319 U.S. 157, 163–64 [63 S.Ct. 877, 880–881, 87 L.Ed. 1324] (1943). But one Justice, joined by two others, expressed the opinion that the considerations underlying *Younger* were equally applicable when civil proceedings were pending in state courts. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 561 [92 S.Ct. 1113, 1126, 31 L.Ed.2d 424] (1972) (White, J., dissenting). Subsequently the Court held that equitable restraint was required in a case where state agents had initiated a public nuisance proceeding against the federal plaintiff in order to close an establishment where allegedly obscene films were exhibited. Though the proceeding was denominated as civil in nature, the state's interest in bringing it was similar to that involved in *Younger*, for the proceeding was "in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 [95 S.Ct. 1200, 1208, 43 L.Ed.2d 482] (1975). *See also Trainor v. Hernandez*, 431 U.S. 434 [97 S.Ct. 1911, 52 L.Ed.2d 486] (1977) (civil suit brought by state agency to recover welfare payments allegedly obtained through fraud). In 1977, *Younger* was applied where civil contempt proceedings were pending in a

---

1. The Supreme Court specifically declined to rule on this question in *Juidice v. Vail*, 430 U.S. at 339 n.16, 97 S.Ct. at 1219 n.16: "The issue of damages is therefore not before us, and we intimate no opinion as to the applicability of *Younger-Huffman* principles to a § 1983 suit seeking only such relief in the District Court." The Eighth Circuit, following this lead, similarly declined to express its views on this issue. *See Caldwell v. Camp*, 594 F.2d 705, 708 n.5 (8th Cir. 1979).

state court. Though the contempt order had arisen in the course of a civil action between private parties and was thus unrelated to the state's interest in criminal enforcement, the Court required equitable restraint because of the "State's interest in the contempt process, through which it vindicates the regular operation of its judicial system . . . ." *Juidice v. Vail*, 430 U.S. 327, 335 [97 S.Ct. 1211, 1217, 51 L.Ed.2d 376] (1977).

*Aristocrat*, 451 F.Supp. at 214–15.

Most recently in *Moore v. Sims, Younger* was applied to prevent interference with a state proceeding in which the state was seeking custody of children who had allegedly been abused by their parents. The Court noted that the state was a party to the state proceedings, and analogized the temporary removal of a child in a child abuse context to the public nuisance involved in *Huffman. Moore v. Sims*, 442 U.S. at 423, 99 S.Ct. at 2377. The Court summarized saying: "the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims, and Texas law appears to pose no procedural barriers." *Id.* at 430, 99 S.Ct. at 2381.

A cohesive outline of the scope and limits of equitable restraint in civil litigation has not yet emerged from these Supreme Court cases. Attempting to follow *Younger* and its progeny, the lower federal courts have stressed several different criteria. . . . Most have agreed since the *Huffman* decision that the distinction between civil and criminal cases is no longer crucial. The application of "notions of comity, equity and federalism"

> "should never be made to turn on such labels as 'civil' or 'criminal' but rather upon an analysis of the competing interests in each case. *Palaio v. McAuliffe*, 466 F.2d 1230, 1232–1233 (5th Cir. 1972); *Cousins v. Wigoda*, 463 F.2d 603 (7th Cir.), application for stay denied, 409 U.S. 1201 [92 S.Ct. 2610, 34 L.Ed.2d 15] (1972) (Rhenquist [*sic*], Circuit Justice)." *Lynch v. Snepp*, 472 F.2d 769, 773 (4th Cir. 1973), *cert. denied*, 415 U.S. 983 [94 S.Ct. 1576, 39 L.Ed.2d 880] (1974).

*Aristocrat*, 451 F.Supp. at 215. "These cases clearly indicate that *Younger* is presumptively applicable to any state proceeding in which the state is seeking to enforce important public policies." Hart & Wechsler, *The Federal Courts and the Federal System* 281 (1981 Supp.).

## B. Comity

*Younger* and its progeny stressed the importance of the "notion of 'comity,' that is, a proper respect for state functions," *Younger v. Harris*, 401 U.S. at 44, 91 S.Ct. at 750, as a basis for these decisions. Subsequent cases make it "clear that considerations of comity are more vital to the doctrine of equitable restraint than the state interest in criminal prosecutions." *Aristocrat*, 451 F.Supp. at 218, *citing Trainor v. Hernandez*, 431 U.S. at 443–44, 97 S.Ct. at 1917–1918; *Juidice v. Vail*, 430 U.S. at 334, 97 S.Ct. at 1216. Most of the cases on equitable restraint involve an attempt to enjoin state proceedings. *See Aristocrat* and cases cited therein. The rationale behind those cases is that the federal courts should not interfere in ongoing state proceedings where the federal plaintiffs had or continue to have an opportunity to present their federal claims in the state proceedings. *Juidice v. Vail*, 430 U.S. at 337, 97 S.Ct. at 1218.

Interference can take the form of enjoining the state proceedings, or superseding those proceedings. In *Aristocrat Health Club of Hartford v. Chaucer* this court noted that while

> on its face plaintiffs' motion for a preliminary injunction seeks to enjoin the action pending in the state court, that is not the substance of the relief requested. . . . This court is rather being asked to supercede the state court's jurisdiction over a case pending before it, by granting a remedy that the state court has denied. In effect, then, plaintiffs seek to substitute the federal court for a state appellate court.

*Id.* at 216.

## C. Plaintiff's Complaint

Although the federal plaintiff in this case does not seek to enjoin an ongoing state

proceeding, the resolution of his damage claims will necessarily involve this court in determining the validity of the state enforcement proceedings. Plaintiff does not directly challenge the constitutionality of the Town of Simsbury's Wetlands Regulations, but the essence of his complaint is that the enforcement of the regulations against him by town officials constituted a "taking" of his property within the meaning of the fifth and fourteenth amendments. (Plaintiff's Complaint ¶¶ 30, 35, 45).

While plaintiff makes other allegations about the manner in which these regulations were enforced, all the acts complained of were directly related to and attendant on the enforcement of the regulations. Plaintiff does not allege that the town officials did anything more than attempt to investigate the condition of his property[2] and require him to obtain a permit for his pond operations in accordance with the Wetlands Regulations.[3] While he alleges bad faith, he does so on the basis that the town was not justified in seeking enforcement of its regulations against him. Essentially plaintiff argues that the pond on his property was not covered by the Wetlands Regulations and therefore all the activities related to its enforcement, and the enforcement

proceeding itself, were unconstitutional deprivations of liberty and property without due process of law.

### D. *Potential Interference with State Proceedings*

Stated thusly, it becomes apparent that plaintiff's complaint for damages is not significantly different from cases seeking injunctive and declaratory relief. "If in the course of adjudicating [plaintiff's] damage claims, a federal court were to rule that the [regulations are] unconstitutional, substantial disruption of the state proceedings would result." *Caldwell v. Camp*, 594 F.2d 705, 708 (8th Cir. 1979). Since plaintiff's damage claim necessarily requires this court to determine the constitutionality of the Wetlands Regulations as applied to plaintiff's property, the potential for interference with the state proceedings is the same as in a suit for injunctive or declaratory relief.[4] The policy considerations underlying the doctrine of equitable restraint are present where, as here, the federal adjudication will interfere with and duplicate pending state proceedings.[5] Just as the application of "notions of comity, equity and federalism" should never turn on such

---

2. Plaintiff claims that the defendants "caused" inspectors from the State Department of Environmental Protection to enter his property and conduct an investigation of the pond and dam. (Complaint ¶¶ 14, 15, 17, 18, 19, 20). This clearly would not be an unconstitutional search within the meaning of the fourth amendment. *See Smith v. Maryland*, 442 U.S. 735, 736, 99 S.Ct. 2577, 2578, 61 L.Ed.2d 220 (1979); *Air Pollution Variance Bd. v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974). More importantly, these activities were directly related to the effort to enforce the regulations. Town officials can hardly be faulted for gathering information prior to undertaking a suit to enforce regulations. If the regulations were correctly applied to the plaintiff (as the state court found), then plaintiff could not complain of the inspection activity, standing alone.

3. Plaintiff also alleges that the defendants' refusal to issue a permit was "arbitrary and capricious." (Complaint ¶ 13). It is clear, however, that plaintiff failed to submit information necessary to obtain a permit. Again, plaintiff's claim comes down to the contention that he did not have to comply with the regulations be-

cause they did not apply to him. This issue was before Judge O'Neill and was decided against the plaintiff.

4. This is not to say that every suit for damages under section 1983 would implicate the doctrine of equitable restraint. In many cases, the issue in the claim for damages will not be closely related to the state proceedings. In cases where the federal court finds that a determination of the issues raised would not interfere with or duplicate a pending state proceeding, then there would be no cause to invoke the principles of *Younger-Huffman*. *See Guerro v. Mulhearn*, 498 F.2d 1249, 1254 (1st Cir. 1974).

5. In *Aristocrat*, this court noted "that considerations of comity are not relevant only where one court is asked to enjoin another. For example, declaratory relief may interfere with the state court's functions in the same way as an injunction would." *Id.* at 218, *citing Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971). Similarly, in this case, the suit for damages may interfere in the same way as an injunction would.

labels as "civil or criminal," they should also not turn on the *form* of the interference. *See Martin v. Merola*, 532 F.2d 191 (2d Cir. 1976).[6]

*Guerro v. Mulhearn*, 498 F.2d 1249 (1st Cir. 1974) was a section 1983 suit for declaratory judgment and damages against state officials alleging that plaintiff's constitutional rights were violated by illegally wiretapping his telephone and using evidence obtained thereby at his criminal trial. Guerro was convicted in the state proceedings, and had not exhausted his state remedies prior to instituting his section 1983 suit in federal court. The court observed that

> Despite the difference in the form of relief being sought, a suit for money damages under section 1983 may also have a substantially disruptive effect upon contemporary state criminal proceedings, and may also undermine the integrity of the writ of habeas corpus. Where the federal court, in dealing with the question of damages caused by violation of civil rights, would have to make rulings by virtue of which the validity of a conviction in contemporary state proceedings would be called in question, the potential for federal-state friction is obvious. The federal ruling would embarrass,

and could even intrude into, the state proceedings.

*Id.* at 1253 (footnotes omitted).

While *Guerro* dealt with potential interference with a state criminal proceeding, it is equally applicable in a civil enforcement proceeding. *Huffman v. Pursue, Ltd.* Another difference between *Guerro* and the instant case is that *Guerro* also involved a claim for declaratory judgment. The First Circuit, however, took the position that if the damage suit required the court to consider the question of the legality of plaintiff's state conviction, then it would be a proper case for restraint. Because the appellate court could not determine if Guerro's damage suit required the resolution of issues involved in the state proceeding, it remanded to the district court.

The court in *Guerro* thus indicated that where a federal court determines that it will be forced to consider the validity of a state conviction or statute to resolve a claim for damages, it should decline to do so and should await the final resolution of the issues in the state proceeding.[7] *Accord Landrigan v. City of Warwick*, 628 F.2d 736, 743 (1st Cir. 1980); *McCurry v. Allen*, 606 F.2d 795, 799 (8th Cir. 1979), *rev'd on other grounds Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).[8]

---

**6.** "That appellants herein have requested such an inquiry in the context of an action for damages rather than a suit directly to enjoin a state criminal proceeding is not determinative." *Martin v. Merola*, 532 F.2d at 195.

**7.** Nothing in *Puerto Rico International Airlines, Inc. v. Silva Recio*, 520 F.2d 1342 (1st Cir. 1975) [*PRINAIR*] implies that the First Circuit has disavowed *Guerro v. Mulhearn*. In *PRINAIR* the federal district court had dismissed a suit for injunctive and declaratory relief brought by the airline under the authority of *Younger*. The Court of Appeals reversed and remanded, concluding that *Younger-Huffman* did not *mandate* dismissal. The court reasoned that this case was distinguishable from *Huffman* because the state proceeding had been brought by private parties (the airline pilots) against the airline. Thus, one of the important criteria for application of *Younger-Huffman*, the presence of the state as a party to the state proceedings, was absent. In addition, the airline had appealed the initial state court decision, but the Supreme Court of Puerto Rico refused to entertain the interlocutory appeal. The First Circuit

thus concluded that the district court should not have dismissed the airline's suit on *Younger-Huffman* principles *alone*, but should have weighed the equities in determining whether to assume jurisdiction. Since the town is a party to the state proceedings in the present case, *PRINAIR* is clearly distinguishable.

**8.** In *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir. 1980) plaintiff brought a section 1983 damage action stemming from an alleged illegal arrest. The state criminal charges against the federal plaintiff for driving too fast for conditions were still pending when this action was commenced. The court found that

> [t]he effect of plaintiff's section 1983 action, were he to prevail on his claim that the defendants lacked probable cause to arrest him for driving too fast for conditions, would be, in practical terms, much the same as the rendering of a declaratory judgment that the pending charge is baseless.... While the Supreme Court has left open the question whether abstention is required when only damages relief is sought in a section 1983

## III. Requirements for Exercise of Equitable Restraint

### A.

In *Aristocrat*, this court referred to several factors relevant to the determination of whether equitable restraint was proper. Foremost among these was "the existence of an ongoing state proceeding where the federal plaintiff's claims can be heard." *Id.* at 216, *citing Huffman v. Pursue, Ltd.*, 420 U.S. at 604, 95 S.Ct. at 1208; *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974); *Perez v. Ledesma*, 401 U.S. 82, 103–04, 91 S.Ct. 674, 686–687, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring and dissenting).

### B.

The second factor "[i]n determining whether a pending state proceeding provides a basis for equitable restraint," *Aristocrat*, 451 F.Supp. at 217, is the presence of the state (in this case the town) as a party to the proceeding, thus assuring that the opposition to the constitutional claims will be heard. *See Trainor v. Hernandez*, 431 U.S. at 443, 97 S.Ct. at 1917; *cf. Huffman v. Pursue, Ltd.*, 420 U.S. at 604, 95 S.Ct. at 1208; *Younger v. Harris*, 401 U.S. at 55 n.2, 91 S.Ct. at 757 n.2 (Stewart, J., concurring). "The justification for *Younger* restraint is increased where the state or local government has an important interest in the outcome of the state proceedings." *Aristocrat*, 451 F.Supp. at 217, *citing Trainor v. Hernandez*, 431 U.S. at 448–50, 97 S.Ct. at 1920–1921 (Blackmun, J., concurring).

action, *Juidice v. Vail*, 430 U.S. 327, 339 n.16 [97 S.Ct. 1211, 1219 n.16, 51 L.Ed.2d 376] (1977), the federalism concerns behind *Younger* abstention would seem applicable here; we therefore hold that plaintiff's section 1983 action, insofar as it concerns the alleged illegal arrest, should be stayed pending final determination in the state court system of the charge resulting from that arrest. *Id.* at 743.

*McCurry v. Allen*, 606 F.2d 795 (8th Cir. 1979), *rev'd on other grounds*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) was also a section 1983 damage claim, brought against police officers for allegedly conducting an ille-

### C.

This court noted that "[t]he principle of comity requires that federal and state courts regard one another with respect and avoid conflicts between their respective jurisdictions." *Aristocrat*, 451 F.Supp. at 218. Continuing, the court observed that "[c]omity requires a federal court to assume that state courts will perform their duty to uphold the Constitution to the best of their abilities. *Huffman v. Pursue, Ltd.*, 420 U.S. at 610–11 [95 S.Ct. at 1211–1212]." *Aristocrat*, 451 F.Supp. at 218.

### D.

The last significant factor referred to in *Aristocrat* was the presence of "exceptional circumstances" which may justify federal intervention where restraint would otherwise be required. The *Younger* exceptions include cases where the loss is "both great and immediate," *Younger v. Harris*, 401 U.S. at 46, 91 S.Ct. at 751, *quoting Fenner v. Boykin*, where the challenged statute is "flagrantly and patently violative of express constitutional provisions in every clause, sentence and paragraph," *Younger v. Harris*, 401 U.S. at 53, 91 S.Ct. at 755, *quoting Watson v. Buck*, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941), and where there is a "showing of bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Younger v. Harris*, 401 U.S. at 54, 91 S.Ct. at 755.

## IV. Application of the Doctrine

The instant case meets all the requirements for the exercise of restraint, and none of the criteria for finding exceptional circumstances are present.

gal search of plaintiff's home. Plaintiff had been convicted in state court for possession of heroin, but had not appealed that conviction at the time this action was filed in federal court. The court concluded that it was appropriate to "temporarily abstain [from hearing plaintiff's claim] until the Missouri courts have had the opportunity to directly review appellant's conviction and the underlying search of his home." 606 F.2d at 799. The Supreme Court, in reversing on the issue of collateral estoppel, merely noted the abstention issue without comment. *Allen v. McCurry*, 449 U.S. 90, 94 n.4, 101 S.Ct. 411, 414 n.4, 66 L.Ed.2d 308, 313 n.4.

### A.

First, it is clear that there is an ongoing state proceeding, since Judge O'Neill issued a temporary injunction, withholding decision on the town's request for a permanent injunction and other relief.[9] Also, "it is abundantly clear that [plaintiff] had an *opportunity* to present [his] federal claims in the state proceedings. No more is required to invoke *Younger* abstention." *Juidice v. Vail*, 430 U.S. at 337, 97 S.Ct. at 1218 (emphasis in original). As there are no procedural barriers to plaintiff raising these constitutional issues in the state proceeding,[10] and the state courts share equally with the federal courts the responsibility for enforcing constitutional rights, *Steffel v. Thompson*, 415 U.S. at 460–61, 94 S.Ct. at 1216–1217, plaintiff "should not be permitted the luxury of federal litigation of issues presented by ongoing state proceedings . . . ." *Huffman v. Pursue, Ltd.*, 420 U.S. at 605, 95 S.Ct. at 1209.

### B.

Second, "[a]s was the case in *Huffman*, the State [here the town] was a party to the state proceedings," and the enforcement of the Wetlands Regulations is similar to the "vindication of 'important state policies such as safeguarding the fiscal integrity of [public assistance] programs,' *Trainor v. Hernandez*, 431 U.S. 434, 444 [97 S.Ct. 1911, 1918, 52 L.Ed.2d 486] (1977)." *Moore v. Sims*, 442 U.S. at 423, 99 S.Ct. at 2377. The presence of the town as a party to the state proceeding assures that the opposition to plaintiff's constitutional claims will be heard.

### C.

Last, there are no grounds for finding any of the "exceptional circumstances" discussed in *Younger*. Plaintiff has not alleged, nor could he, that the statute is unconstitutional in "every clause, sentence and paragraph." While plaintiff does allege that the filing of the enforcement action by the town was "vexatious" and "frivolous" (Complaint ¶ 30), this still does not make out a sufficient claim of bad faith and harassment under *Younger*. In *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) the Supreme Court found bad faith in the context where state officials continued to threaten prosecutions even after arrest warrants were quashed by the state court. In *Cameron v. Johnson*, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) the Court described the prohibited conduct as enforcing the statute "in bad faith [and] harassing appellant's exercise of protected expression with no intention of

9. There can be no question that the state court proceedings are still pending. The state court issued its temporary injunction against plaintiff on April 10, 1981. Under state law, plaintiff has the opportunity to move to dissolve this temporary injunction. Conn.Gen.Stat. § 52–475. Moreover, plaintiff has not filed an answer in the state action. (Defendants' Exhibit 3, Affidavit of Attorney Marshall Berger.) Therefore, he retains the right to litigate the state court action in the ordinary manner through discovery and trial, in the course of which he could certainly raise his constitutional claims by way of defense.

10. Plaintiff has several options by which he can raise his constitutional claims in the state proceeding. First, under Connecticut law he retains the right to seek dissolution of the temporary injunction, Conn.Gen.Stat. § 52–475, and to contest that action on its merits by closing the pleadings and going to trial. Second, plaintiff could raise his constitutional claims as counterclaims in the state enforcement proceeding, provided they arise out of the transaction which is the subject of the complaint.

Connecticut Practice Book § 78. In *Jackson v. Conland*, 171 Conn. 161, 368 A.2d 3 (1976) the Connecticut Supreme Court indicated that section 78 "is a common-sense rule designed to permit the joinder of closely related claims where such joinder is in the best interests of judicial economy," and that a court should be guided by the flexible meaning that the word "transaction" has been given under Rule 13(g) of the Federal Rules of Civil Procedure in order to promote the "avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action . . . ." *Id.* at 166–67, 368 A.2d 3.

In addition, plaintiff is required to "exhaust his state appellate remedies before seeking relief in the District Court unless he can bring himself within one of the exceptions specified in *Younger*." *Huffman v. Pursue, Ltd.*, 420 U.S. at 608, 95 S.Ct. at 1210. Since plaintiff has not availed himself of the opportunities to raise his constitutional claims in the state proceeding, he had clearly not met the exhaustion requirement of *Huffman*.

pressing charges or with no expectation of obtaining convictions, knowing that appellant's conduct did not violate the statute." *Id.* at 619–20, 88 S.Ct. at 1340.

In the instant case, there are no allegations that the Town of Simsbury "harassed" plaintiff by threatening or filing lawsuits with no intention of pressing charges. While plaintiff does characterize the action as "frivolous," that does not imply bad faith but rather reflects his opinion that the case is without merit. Given Judge O'Neill's finding that plaintiff violated the permit requirement of the Wetlands Regulations, it would be impossible to conclude that the town initiated this action "knowing that [plaintiff's] conduct did not violate the statute." *Id.* at 619–20, 88 S.Ct. at 1340. Whatever the merits of plaintiff's case (which are not before the court), he has failed to allege sufficient facts which meet the standard of bad faith and harassment described in *Dombrowski v. Pfister* and *Cameron v. Johnson.*

### V. *Conclusion*

Having decided that restraint is appropriate, we must consider what form the restraint should take. In the typical *Younger-Huffman* case, the federal court action seeking equitable relief is dismissed pending a final resolution of the state proceedings. In *Giulini v. Blessing*, 654 F.2d 189 (2d Cir. 1981) the Court of Appeals considered whether it was appropriate to dismiss a section 1983 damage action on *Younger-Huffman* principles alone. The court determined that the damage action should not be dismissed, *id.* at 193, but stated that:

> a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views.

*Id.* (citations omitted). Accordingly, the federal damage action will be stayed pending final resolution of the constitutional issues in the state proceedings.

In conclusion, I hold that the policy reasons supporting the exercise of equitable restraint in cases seeking injunctive or declaratory relief apply equally in a suit for damages, where the federal court would have to resolve issues which have been or continue to be capable of resolution in a pending state proceeding. The principle of comity requires that the state court be given the opportunity to resolve constitutional issues without interference from the federal courts. Restraint is appropriate where, as here, plaintiff has the opportunity to raise his constitutional claims in the state proceeding, where the state is a party to the state proceeding, and where there are no exceptional circumstances to justify federal intervention. Accordingly, these proceedings will be stayed pending final resolution of plaintiff's claims in the state proceedings.

SO ORDERED.