**Barbara A. OBEDA and E.I.S., Inc.**

**v.**

**CONNECTICUT BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS, et al.**

**Civ. No. H–82–363.**

United States District Court,
D. Connecticut.

Aug. 12, 1983.

Haynes N. Johnson, Samuel M. Chambliss, Johnson & Chambliss, Danbury, Conn., for plaintiffs.

Robert P. Hanahan, Middlebury, Conn., Thomas J. Shortell, Updike, Kelly & Spellacy, Hartford, Conn., Neil Fishman, Steven M. Rutstein and Robert M. Langer, Robert Statchen, Asst. Attys. Gen., Hartford, Conn., for defendants.

BLUMENFELD, Senior District Judge.

## RULING ON PENDING MOTIONS

This ruling disposes of three pending motions. The first is a motion to reconsider this court's ruling of December 28, 1982, in which this court dismissed the action in total on *Younger* abstention grounds, in response to a motion by the state defendants to dismiss or stay. This ruling supersedes that earlier ruling. The other two motions decided here are motions to dismiss filed by the two private defendants. Section I below gives the facts; section II discusses the claims against the state defendants; and section III discusses the claims against the private defendants.

## I. FACTS

To understand which, if any, of plaintiffs' claims may proceed, and against which defendants, it is necessary to identify clearly the parties and claims involved. The plaintiffs are a consulting firm, E.I.S., Inc., and its principal stockholder, Barbara A. Obeda. The defendants are one state agency, six state officials, and two private parties. The agency is the Connecticut Board of Registration for Professional Engineers and Land Surveyors (hereinafter, "Board"). The six state officials are four members of the Board, Joseph Cermola, Lawrence Fa-

gan, Jr., Rocco D'Andrea, and Gourie Mukherjee; an assistant secretary of the Board, John Casey; and the Commissioner of Consumer Protection, Mary Heslin. The private parties are the Connecticut Society of Professional Engineers (hereinafter, "Society") and an engineer, Francis Paul.

The plaintiffs filed suit because they were aggrieved by a Board proceeding against plaintiff E.I.S. The Board had charged E.I.S. with practicing engineering without a license, in violation of the Connecticut statutes regulating the practice of engineering.

The Board issued a formal charge dated June 8, 1981, a copy of which plaintiffs have attached as Exhibit B to the Complaint. This charge alleged two violations of Conn. Gen.Stat. § 20–306a, which (in conjunction with section 20–302) prohibits the unlicensed "practice of or . . . offer to practice engineering" by corporations. (These sections are found in Conn.Gen.Stat.Ann. (West Supp.1983–1984).) The first alleged violation was the preparation of a report to the Woodbury Planning Commission in May 1980 concerning a proposed development at Curtiss Place in Woodbury. The second alleged violation was a listing in the 1980–1981 Danbury Yellow Pages under the heading "Engineers—Consulting."

Plaintiffs claim that their Curtiss Place report is protected speech, Complaint ¶ 25, and that the Connecticut statute is unconstitutional both on its face and as applied to preparation of this report, Complaint ¶ 27. On its face, plaintiffs claim, the statute's prohibition of the unlicensed "practice of engineering," without further definition of this phrase, is unconstitutionally vague and/or overbroad. *See* Complaint ¶¶ 20, 21, 23, 25.

Regarding the statute's application to the preparation of the Curtiss Place report, plaintiffs assert that the report was not engineering, "nor could it possibly harm the public welfare or impair the safeguarding of life, public health or property." Complaint ¶ 16. Plaintiffs have attached a copy of this report as Exhibit A to the Complaint, and they assert that, rather than containing any engineering design or certi-

fication, it consists merely of *comments* on an engineering report (said report prepared in part by defendant Francis Paul) concerning a proposed business condominium development at Curtiss Place. Complaint ¶¶ 15, 22. Plaintiffs characterize the report as commenting on "matters such as sight lines, drainage from the site, the effect of storm water runoff on adjacent cranberry bogs, possible inaccuracies in contour lines, protection of an adjacent Historic District, the effect of the proposed septic system placement, the lack of an engineering seal on the proposal, the absence of water runoff data, the absence of a traffic study, and the absence of consideration of the effect of traffic on the Historic District." Complaint ¶ 15.

Plaintiffs allege that the action of the Board members and assistant secretary in charging E.I.S. "was unlawful, arbitrary and capricious, was outside of their Constitutional, statutory, and regulative authority, and was outside Defendant Engineering Board's regulations." Complaint ¶ 21. Consumer Protection Commissioner Heslin allegedly knew of the Board's action but, acting "in concert with" the other defendants, failed to make a statutorily required review of the Board's action. Complaint ¶ 11. The private defendants allegedly "acted in concert with the other defendants" in causing the Board to charge E.I.S., "thereby endeavoring, in bad faith to deprive plaintiffs of their rights of free speech." Complaint ¶¶ 12–13.

Plaintiffs sue under two federal statutes. First, they sue under 28 U.S.C. § 2201 (1976 & Supp. IV 1980) for a declaratory judgment that the Connecticut statute is unconstitutional on its face and as applied.[1] Complaint ¶¶ 5, 25–27. Second, they sue under 42 U.S.C. § 1983 (1976 & Supp. IV 1980) (deprivation of civil rights under color of state law) for injunctive relief, damages, and attorney fees. Complaint ¶¶ 5, 29; Complaint at 12–13 para. (d)–(f).

Since this suit was filed, the Board issued a "Final Decision and Order" dated June 24,

1982. A copy of the decision is attached as Exhibit A to the state defendants' Supplemental Memorandum in Support of Defendants' Motion to Dismiss or to Stay Action. The Board found that three particulars of E.I.S.'s Curtiss Place report constituted the practice of engineering: (1) a statement that certain sight lines were in excess of 200 feet; (2) a statement that "[o]ne alternative to apparent shortness of road would be to move the entrance on South Pomperaug Ave. twenty feet (20) south"; and (3) a statement that "Rip Rap for energy dis[s]ipators must be designed into an appropriate water control plan." *See* Decision at 3 ¶¶ 6–8 *together with* Curtiss Place Report at ¶¶ 1, 2, 18–19. The Board also found that E.I.S.'s Yellow Pages listing under the heading "Engineers—Consulting" was an offer to practice engineering. Decision at 3 ¶ 1. The Board concluded that E.I.S. "has practiced and offered to practice" engineering without a license, thus violating section 20–306a, Decision at 3 ¶ 1, and ordered immediate discontinuance of violations of this section, Decision at 4. E.I.S. has appealed this decision to the Connecticut Superior Court, pursuant to Conn. Gen.Stat. § 4–183(a).

## II. THE STATE DEFENDANTS

This section discusses plaintiffs' claims against the state defendants. The claims for injunctive and declaratory relief are dismissed on the ground of *Younger* abstention, while the claims for damages are stayed pending resolution of E.I.S.'s appeal in state court from the Board's decision. In addition, certain of the damage claims are dismissed on eleventh amendment grounds.

The claims for injunctive and declaratory relief will be discussed first, followed by the claims for damages.

### A. *Plaintiffs' Claims for Injunctive and Declaratory Relief*

Plaintiffs' claims against the state defendants for injunctive and declaratory relief must be dismissed on the ground of

---

1. Plaintiffs actually complain not about section 20–306a, which was cited in the Board's charge, but about the related sections 20–299,

20–302, and 20–307a (found in Conn.Gen.Stat. Ann. (West Supp.1983–1984)).

"equitable restraint," also known as "*Younger* abstention."

Equitable restraint is a doctrine of federal court noninterference in pending state judicial proceedings which involve important state interests. *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). It applies typically when a party to the state proceeding might assert a federal constitutional claim as a defense to a state criminal or civil enforcement action, but chooses instead, or in addition, to file a federal suit, concerning the same matter, for declaratory and/or injunctive relief. *See, e.g., id.* at 2519–20, 2524 (state bar disciplinary proceeding); *Moore v. Sims,* 442 U.S. 415, 422, 423, 435, 99 S.Ct. 2371, 2376–77, 2383, 60 L.Ed.2d 994 (1979) (child custody proceedings); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 598, 604–05, 95 S.Ct. 1200, 1205, 1208–09, 43 L.Ed.2d 482 (1975) (civil nuisance proceeding "in aid of and closely related to" criminal obscenity statutes); *Samuels v. Mackell,* 401 U.S. 66, 67, 68–69, 72–73, 91 S.Ct. 764, 765–66, 767–68, 27 L.Ed.2d 688 (1971) (criminal anarchy charge); *Younger v. Harris,* 401 U.S. 37, 38–39, 43–45, 53–54, 91 S.Ct. 746, 747–48, 750–51, 755, 27 L.Ed.2d 669 (1971) (criminal syndicalism prosecution). Injunctive relief would necessarily interfere with the state proceeding. *See Younger,* 401 U.S. at 45–46, 91 S.Ct. at 751. Declaratory relief would likely interfere also, both by paving the way for an injunction and by its collateral estoppel effects. *Samuels,* 401 U.S. at 72–73, 91 S.Ct. at 767–68. Under the doctrine of equitable restraint, a federal court will dismiss[2] a suit for injunctive and/or declaratory relief under these circumstances "unless state law clearly bars the interposition of the constitutional claims" in the state proceeding. *Moore,* 442 U.S. at 426, 99 S.Ct. at 2379. "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex,* 102 S.Ct. at 2521 (emphasis in original).

The doctrine of equitable restraint applies here. First, plaintiffs here are involved in an ongoing state judicial proceeding. Second, that proceeding involves important state interests. Third, the injunctive and declaratory relief sought by plaintiffs here would interfere with that proceeding. Fourth, the constitutional claims pressed by plaintiffs here can be raised by plaintiffs in the state proceeding.

1. *Plaintiffs are involved in an ongoing state judicial proceeding.*

After plaintiffs Obeda and E.I.S. filed their complaint in this case, the Board issued a cease-and-desist order against E.I.S., and E.I.S. appealed that decision to the Connecticut Superior Court. Since the state court appeal was initiated before this court held "any proceedings of substance on the merits,"[3] the state suit was "ongoing" early enough to invoke the doctrine of equitable restraint. *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975).[4] Though Obeda is not technically a party to the state suit, her interests are sufficiently intertwined with those of E.I.S. for her to be barred also from federal

---

**2.** Plaintiffs argue that a stay, rather than dismissal, would be appropriate. However, the proper action by the district court when *Younger* abstention applies is dismissal, not a stay. *Trainor v. Hernandez,* 431 U.S. 434, 440–41, 97 S.Ct. 1911, 1916–17, 52 L.Ed.2d 486 (1977); *see Samuels,* 401 U.S. at 73, 91 S.Ct. at 768. Plaintiffs cite to the contrary *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). That case, however, deals not with *Younger* abstention but with *Pullman* abstention.

**3.** Of course, this court has still not held any proceedings on the merits.

**4.** It does not matter that E.I.S. rather than the state filed the state lawsuit. If anything, a party voluntarily filing a state suit is a *more* fitting subject for abstention. *Aristocrat Health Club of Hartford v. Chaucer,* 451 F.Supp. 210, 219 (D.Conn.1978) (federal plaintiff massagists and massage establishments had filed state suit to restrain enforcement of city ordinance). In any case, the suit by E.I.S. here does not seem voluntary. Just as E.I.S. was entitled to appeal the Board's decision to the superior court, Conn.Gen.Stat. § 4–183(a) (1981), so too was the Board entitled to sue in superior court to enforce its order, Conn.Gen. Stat. § 21a–7(2) (found in Conn.Gen.Stat.Ann. (West Supp.1983–1984)). Presumably, if E.I.S.

court.[5] In sum, *plaintiffs* (E.I.S. and, by association, Obeda) are involved in an *ongoing* (commenced early enough) state judicial proceeding.[6]

## 2. The state proceeding involves an important state interest.

By regulating engineering, the state seeks to protect life, health, and property.

*See* Conn.Gen.Stat. § 20–299 (1981). If the state could not effectively regulate engineering, and for example buildings were designed and built by unqualified persons, the results could be catastrophic.[7] Further, the state's regulatory machinery and its participation in the ongoing state proceeding evidence the state's strong interest. *See Aristocrat Health Club of Hartford v.*

---

had not sued to appeal the Board's order, the Board would have sued to enforce it.

**5.** Obeda is president and 95% owner of E.I.S. Complaint ¶ 7(b). Obeda may then be treated as a sort of alter ego to E.I.S. for *Younger* abstention purposes. *Hicks v. Miranda,* 422 U.S. at 348–49, 95 S.Ct. at 2291–92; *Aristocrat Health Club of Hartford v. Chaucer,* 451 F.Supp. 210, 219–20 (D.Conn.1978). In *Hicks,* the state had issued criminal charges against a theater's employees, and had seized the theater owners' allegedly obscene films. Though no state proceeding involved the theater owners themselves, the Court held that *Younger* abstention barred these owners from federal court. The Court noted that the owners had a "substantial stake in the state proceedings," and that their interests "were intertwined" with those of their employees. "Absent a clear showing that [the owners], whose lawyers also represented their employees, could not seek the return of their property in the state proceedings and see to it that their federal claims were presented there," the Court held *Younger* abstention applicable. (This was an alternative holding. The Court also held *Younger* abstention applicable because criminal charges against the owners themselves were filed "before any proceedings of substance on the merits ha[d] taken place in the federal court." *Id.,* 422 U.S. at 349, 95 S.Ct. at 2292.) Here, since Obeda owns 95% of E.I.S., she had a "substantial stake" in the state proceeding, her interests are "intertwined" with those of E.I.S., and she can ensure that E.I.S. presents the federal claims in the state court. Therefore, *Younger* abstention applies to her.

Additionally, because Obeda would be bound as a privy to E.I.S. for purposes of res judicata, *cf. Ellentuck v. Klein,* 570 F.2d 414, 425–26 (2d Cir.1978) (property owners barred as privies to property owners' association); *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977) (contractors barred as privies to trade associations) ("one whose interests were adequately represented by another vested with the authority of representation is bound"), she should a fortiori be considered as one with E.I.S. for *Younger* abstention, *see* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *The Federal Courts and the Federal System* 279–80 (2d ed. Supp.1981) (insert to Second Edition p.

1050, Further Note on Enjoining State Proceedings ¶ 4).

**6.** E.I.S.'s appeal to state court from the Board's decision makes it unnecessary for this court to decide whether the Board proceedings themselves constitute "judicial proceedings" under the *Younger* abstention doctrine. The Second Circuit has held that *Younger* abstention is triggered by ongoing state administrative proceedings. *McCune v. Frank,* 521 F.2d 1152, 1158 (2d Cir.1975) (police disciplinary proceedings). However, the narrowly drawn recent Supreme Court opinion in *Middlesex,* 102 S.Ct. at 2522 (close connection between state bar disciplinary proceedings and state supreme court made such proceedings "judicial"), suggests that not all state administrative proceedings will suffice.

**7.** Plaintiffs assert that, however important it may be in general for the state to regulate engineering, the Curtiss Place report "did not involve engineering design [or] certification," Complaint ¶ 22, and "could [not] possibly harm the public welfare or impair the safeguarding of life, public health or property," Complaint ¶ 16. If plaintiffs are correct, would *Younger* abstention then not apply because no important state interests are involved? To put it another way, is it sufficient that the state have an important interest in regulating engineering in general, or must the state also have an important interest in regulating the particular conduct in question in each case?

This court is unaware of clear authority on this point. However, when the *Younger* abstention doctrine was born, in the context of ongoing state criminal prosecutions, the Supreme Court gave no hint that a case-by-case analysis was necessary. Rather, the state's general interest in enforcing its criminal laws was apparently sufficient. In *Younger v. Harris,* the Court stressed

the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. 401 U.S. at 44, 91 S.Ct. at 750. For this and other reasons, the Court explained, federal

*Chaucer,* 451 F.Supp. 210, 217 (D.Conn.1978) (by implication).

### 3. Injunctive and/or declaratory relief would interfere with the ongoing state proceeding.

Plaintiffs seek a declaratory judgment that the statute is unconstitutional on its face and as applied, and injunctive relief against future attempted enforcement. Complaint at 12–13 para. (a), (b), (d). Either form of relief against any state defendant would presumably have a collateral estoppel effect on the state, thus interfering with the state proceeding. Therefore, abstention is necessary to avoid interference. *Conover v. Montemuro,* 477 F.2d 1073, 1080 (3d Cir.1973) (in federal suit for injunctive or declaratory relief against state officers, the propriety of *Younger* abstention depends on whether the federal suit would "adjudicate an issue ... which on the basis of collateral estoppel might affect the state prosecution"), *cited with approval in Gerstein v. Pugh,* 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975).

### 4. Plaintiffs may raise their constitutional claims in the state proceeding.

Plaintiffs claim here that the Connecticut statute infringes their free speech rights. The statutory provision for appeal from the Board's ruling provides that the court may reverse or modify the Board's decision if it is in violation of "constitutional" provisions. Conn.Gen.Stat. § 4–183(g) (1981). Though no Connecticut cases on point have been found, it seems natural that "constitutional" includes the federal constitution. At

any rate, state law does not "clearly bar[ ]" the federal claim, *Moore,* 442 U.S. at 426, 99 S.Ct. at 2379. *Younger* abstention may therefore apply.

Plaintiffs stress that, while the state proceeding concerns only one particular report put out by E.I.S., plaintiffs' business involves a wide range of consulting activities which might be subject to a similar challenge under the Connecticut statute. Plaintiffs assert that a ruling on the one report in question cannot clear the air regarding plaintiffs' activities in general. Plaintiffs are wrong. The state court might in the pending proceeding sharply and definitively limit the statute's scope, based on either statutory interpretation or a conflict of the statute with the state or federal constitution. *See* Conn.Gen.Stat. § 4–183(g) (1981). Given that the state court might rule on the constitutional claims, *Younger* abstention is appropriate even in cases of alleged facial vagueness or overbreadth. *Younger,* 401 U.S. at 50–53, 91 S.Ct. at 753–55. The *Younger* court explained that the state's interest in enforcing laws against socially harmful conduct, plus the need for courts to wait for concrete controversies, justifies some "chilling effect" on speech rights; the Court explained also that federal interference would not effectively cure the chilling effect. *Cf. Moore,* 442 U.S. at 427–30, 99 S.Ct. at 2379–81 (reviewing policy and precedent against federal courts' considerations of broad-based challenges to state statutes, to establish that "[t]he breadth of a challenge to a complex state statutory scheme has traditionally militated in *favor* of abstention, not *against* it" (emphasis in original)).[8]

---

courts have not normally enjoined state criminal prosecutions. *Id.* at 45, 91 S.Ct. at 751. The *Younger* abstention doctrine then expanded to shield ongoing noncriminal state judicial proceedings which involved important state interests. *See Middlesex,* 102 S.Ct. at 2521. By analogy with the criminal context, the state's interest in a general scheme of civil regulation should be sufficient, without the need for a case-by-case examination.

Of course, some line must be drawn. A state's interest in regulating engineering does not entitle it to a *Younger* abstention shield against federal interference if the state, under

the guise of regulating engineering, seeks to control conduct having absolutely nothing to do with engineering. However, in such a case, the bad faith exception to *Younger* abstention, *see infra* p. 1014, would apply.

**8.** Plaintiffs point out that the state court may decide the case on other grounds, such as alleged procedural infirmities in the administrative proceeding. Such a possibility however is present, with more or less probability, in every instance of *Younger* abstention. *Moore* requires only that state law does not "clearly bar[ ] the interposition of the constitutional

The *Younger* abstention doctrine does admit of some exceptions. Disclaiming any attempt to specify them all, 401 U.S. at 54, 91 S.Ct. at 755, the *Younger* court touched on three. Plaintiffs fit none of these, and they have not argued for any further exception.

The first exception occurs when the state institutes proceedings in bad faith. *Younger,* 401 U.S. at 54, 91 S.Ct. at 755. Plaintiffs neither alleged bad faith on the part of the state defendants in the Complaint, nor argued it on the state defendants' motion to dismiss.

The second exception occurs when a statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " 401 U.S. at 53–54, 91 S.Ct. at 755 (quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). The statute here falls far short of such patent unconstitutionality.

Third, the *Younger* court allowed that plaintiff might face immediate, great, and irreparable injury. 401 U.S. at 46, 91 S.Ct. at 751. Plaintiffs assert that they "no longer know whether or not they can engage in environmental systems analysis and exercise rights of freedom of speech relating to it." Plaintiffs' Memorandum in Opposition

to State Defendants' Motion to Dismiss or Stay Action at 3. However, "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger,* 401 U.S. at 51, 91 S.Ct. at 754. Further, plaintiffs have so far been involved in only one administrative proceeding, followed by plaintiffs' suit in superior court to set aside the Board's order. Plaintiffs have not shown that further state proceedings are likely. Plaintiffs have further not shown that any state *criminal* proceeding is likely or even possible. Since "the cost, anxiety, and inconvenience of having to defend against" even a single *criminal* prosecution does not qualify a plaintiff for this third exception to *Younger,* 401 U.S. at 46, 91 S.Ct. at 751, plaintiffs here a fortiori cannot bring themselves within this exception. If, later, plaintiffs are beset by multiple state proceedings, they may renew this issue in a subsequent suit.

In conclusion, plaintiffs' claims for injunctive and declaratory relief against the state defendants must be dismissed on the ground of *Younger* abstention.

**B. *Plaintiffs' Claims for Damages***

 In this circuit, *Younger* abstention does not bar a suit for damages under 42 U.S.C. § 1983.[9] *Giulini v. Blessing,* 654

claims," 442 U.S. at 426, 99 S.Ct. at 2379; it does not require any assurance that the state court will actually reach the constitutional issue in its decision. This court trusts that the Connecticut court will understand plaintiffs' need for a determination of the constitutional issues. If the state court either decides the case against plaintiffs, or decides it for plaintiffs on procedural grounds, plaintiffs may then sue in federal court for prospective relief if no further state proceeding is pending. *Wooley v. Maynard,* 430 U.S. 705, 711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977) (prior state convictions no bar to federal suit for prospective relief; injunctive relief available on facts present); *Doran v. Salem, Inc.,* 422 U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975) (injunctive relief available on facts present); *Steffel v. Thompson,* 415 U.S. 452, 475, 94 S.Ct. 1209, 1223–24, 39 L.Ed.2d 505 (1974) (declaratory relief available to challenge statute on its face and as applied). If another state proceeding is then pending, plaintiffs might neverthe-

less be able to sue in federal court, arguing on the basis of experience that the state court is an inadequate forum to decide the constitutional issues. That issue is left for another day. Alternatively, if another state administrative proceeding is brought with procedural infirmities, plaintiffs might possibly argue a bad faith exception to *Younger* abstention, *see infra* p. 1014.

9. In *Juidice v. Vail,* 430 U.S. 327, 339 n. 16, 97 S.Ct. 1211, 1219 n. 16, 51 L.Ed.2d 376 (1977), the Court noted: "The issue of damages is therefore not before us, and we intimate no opinion as to the applicability of *Younger-Huffman* principles to a § 1983 suit seeking only such relief in the District Court." The First Circuit has applied *Younger* abstention to bar a section 1983 action for damages, noting that a federal damage award could interfere in various ways with a state proceeding, including by its collateral estoppel effects. *Guerro v. Mul-*

F.2d 189, 193 (2d Cir.1981) (Mansfield, J., joined by Friendly and Kearse, JJ.). In *Giulini,* the plaintiffs challenged a municipal land use ordinance under section 1983, asking for injunctive and declaratory relief, and for damages. *Id.* at 190. In state court, these plaintiffs were being prosecuted for violation of the ordinance. *Id.* at 193. The court held that the claims for injunctive and declaratory relief were barred by *Younger* abstention. *Id.* The court held however that *Younger* abstention did *not* apply to the damage claims.

Appellants' damages claims stand on a different footing. The pendency of a state proceeding raising identical issues does not entitle a federal court to dismiss a federal action over which it has mandatory subject matter jurisdiction, except in circumstances not found here. [Citations.]

*Id.*

Though the court in *Giulini* held *Younger* abstention inapplicable to the damage claims, it did stay these claims, stating that

a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views. [Citations.]

*Id.* at 193. In *Price v. Rust,* 527 F.Supp. 569, 577 (D.Conn.1981), this court held that the policy behind equitable restraint applies "equally in a suit for damages, where the federal court would have to resolve issues which have been or continue to be capable of resolution in a pending state proceeding." This court in *Price* therefore stayed plaintiff's action for damages "pending final resolution of plaintiff's claims in the

state proceedings." Following *Price,* this court similarly stays plaintiffs' damage claims against the state defendants here, pending final resolution of plaintiffs' claims in the state proceedings.

Even though plaintiffs' claims for damages against the state defendants are thus stayed, it is convenient now to rule on these defendants' claims of immunity.

■ The state defendants (the Board and the six officials) assert that the eleventh amendment bars a section 1983 suit for damages against the state or against state officials acting in their official capacities. This is correct. *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890) (eleventh amendment bars citizen from suing his own state); *Edelman v. Jordan,* 415 U.S. 651, 674–78, 94 S.Ct. 1347, 1361–63, 39 L.Ed.2d 662 (1974). The Court in *Edelman* explained that a judgment against state officers "may not include a retroactive award which requires the payment of funds from the state treasury." *Id.* at 677, 94 S.Ct. at 1362. *See also Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1033–34, 67 L.Ed.2d 132 (1981) (per curiam) (relying on *Edelman* ); *id.* at 151–55, 101 S.Ct. at 1035–37 (Stevens, J., concurring) (explaining considerations for and against overruling *Edelman* ). Thus, plaintiffs' claim for damages against the Board must be dismissed, as must plaintiffs' claim for damages against state officials, insofar as the officials are sued in their official capacities.

The eleventh amendment is no bar to a damage suit against state officials in their individual capacities, since damages would not have to be paid from the state treasury.

---

hearn, 498 F.2d 1249, 1253 (1st Cir.1974). However, extending *Younger* abstention to damage actions does pose the problem that the federal plaintiff cannot find equivalent relief in state court.

The basic premise of the doctrine of *Douglas v. City of Jeannette* and *Younger v. Harris* is that federal equitable intervention is not warranted if the federal plaintiff can secure a full and fair day in court on his constitutional claims by raising them by way of defense in a

state enforcement proceeding which is already underway or is imminent anyway. The central notion is that defending the state prosecution provides an adequate remedy, one that is the substantial equivalent of the remedy available in the federal court.

P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *The Federal Courts and the Federal System* 283–84 (Supp.1981) (Further Note on Enjoining State Proceedings ¶ 7, inserted on page 1050 of 2d ed. 1973).

*Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). Officials are protected from such suits by a qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2736–39 & n. 30, 73 L.Ed.2d 396 (1982). This immunity must be pleaded as an affirmative defense, *id.* at 2737, and the policy behind this immunity favors resolution of the immunity issue, when possible, on a summary judgment motion, *id.* at 2736–39. The defendant officials in this case have not yet filed answers to the Complaint. Accordingly, the qualified immunity issue is not now ripe for decision.

In conclusion, all of plaintiffs' damage claims against the state defendants are dismissed, except that the claims against the state officials in their individual capacities are merely stayed.

### III. THE PRIVATE DEFENDANTS

The two private defendants, the Society for Professional Engineers and Francis A. Paul, have moved to dismiss the suit as to them. This motion is granted.[10]

Plaintiffs' suit against the private defendants, as against the others, allegedly rests on two grounds: the Declaratory Judgment Act, 28 U.S.C. § 2201 (1976 & Supp. IV 1980), and 42 U.S.C. § 1983 (1976 & Supp. IV 1980). Under the Declaratory Judgment Act, plaintiffs seek a declaration that the Connecticut statute is unconstitutional on its face and as applied. Under section 1983, plaintiffs seek injunctive relief and damages.

■■■ Plaintiffs' claim for declaratory relief under the Declaratory Judgment Act fails for lack of a live controversy. A live controversy is a prerequisite for declaratory

as well as coercive relief. *Powell v. McCormack,* 395 U.S. 486, 517–18, 89 S.Ct. 1944, 1961–62, 23 L.Ed.2d 491 (1969); *Cutaiar v. Marshall,* 590 F.2d 523, 527 (3d Cir.1979). Since the private defendants do not enforce the statute, plaintiffs have no dispute with these defendants over the statute's constitutionality.[11]

■■■ Plaintiffs' claim under section 1983 also fails. In *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 160–61, 90 S.Ct. 1598, 1605, 1609–10, 26 L.Ed.2d 142 (1970), the Supreme Court clearly implied that, to establish a claim against a private party under section 1983, a plaintiff must prove that a state official "reached an understanding" with the private party to violate plaintiff's rights. The Seventh Circuit has held that this understanding not only must be proved at trial, but must also be alleged with specificity in the complaint. A plaintiff must allege not merely that the private party acted "in concert" with public officials, or "with a common goal"; rather, the plaintiff must allege a "mutual understanding" between the private and public defendants, supported by "factual allegations suggesting such a 'meeting of the minds.'" *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir.1980) (quoting *Sparkman v. McFarlin,* 601 F.2d 261, 268 (7th Cir.1979) (en banc) (concurring opinion of Sprecher, J.)). Merely alleging that the private defendant lodged a complaint with state officials is not sufficient. *Id.*

In this case, plaintiffs have alleged merely that the two private defendants complained to the Board about E.I.S.'s report, Complaint ¶¶ 17, 18, and that they "acted in concert with the other defendants," Com-

---

**10.** Because, as will be seen, the claims against the private defendants are dismissed for grounds unrelated to *Younger* abstention, the possible application of *Younger* abstention to plaintiffs' claims against these defendants need not be considered.

**11.** A declaratory judgment concerning the statute's constitutionality could bear on the merits of any section 1983 claims by plaintiffs against the private defendants. However, such a declaratory judgment would not resolve those

claims, and declaratory actions should not be used for such piecemeal trial of claims. *Panama Processes S.A. v. Cities Service Co.,* 362 F.Supp. 735, 738 (S.D.N.Y.1973) (dismissing suit for mere declaration that a contract is still binding, since such declaration would leave open the contract's interpretation and would thus not resolve parties' dispute), *aff'd,* 496 F.2d 533 (2d Cir.1974) (per curiam) ("[w]e affirm the judgment on Judge Gurfein's well-reasoned opinion below").

plaint ¶¶ 12, 13. Following the Seventh Circuit's interpretation of *Adickes,* I hold that such allegations are insufficient. *See also Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam) ("This court has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed."); *Reilly v. Leonard,* 459 F.Supp. 291, 300-01 (D.Conn.1978) (Clarie, Ch. J.) (" 'It is an important public policy to weed out the frivolous and insubstantial [civil rights] cases at an early stage . . . .' ") (quoting *Valley v. Maule,* 297 F.Supp. 958, 960-61 (D.Conn.1968)). Therefore, the claim against the private defendants under 42 U.S.C. § 1983 must be dismissed.

## IV. ORDER

Plaintiffs' claims against the state defendants (the Connecticut Board of Registration for Professional Engineers and Land Surveyors; Messrs. Cermola, Fagan, D'Andrea, Mukherjee, and Casey; and Ms. Heslin) for injunctive and declaratory relief are dismissed without prejudice on the ground of *Younger* abstention. Plaintiffs' claims for damages against the Board are dismissed with prejudice on eleventh amendment grounds. Plaintiffs' claims for damages against the state officials are dismissed with prejudice on eleventh amendment grounds, except that plaintiffs may still proceed against the officials in their individual capacities. These claims for damages are, however, stayed pending final resolution of plaintiffs' constitutional claims in the state court appeal of the Board's decision.

Plaintiffs' claims against the individual defendants (the Connecticut Society of Professional Engineers, and Mr. Paul) are dismissed. The claims for declaratory relief are dismissed without prejudice for lack of a live controversy. The claims under 42 U.S.C. § 1983 are dismissed without prejudice for failure to state a claim.

SO ORDERED.